Levi Lee LAUB, Appellant,

v.

Dr. Richard PESIKOFF, Appellee.

Levi Lee LAUB, Appellant,

v.

Dr. Rita JUSTICE, PH.D., Appellee.

Nos. 01–96–01408–CV, 01–96–01559–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 30, 1998.

Rehearing Overruled Aug. 31, 1998.

Robert Piro, Houston, for Appellant.

John Wesley Raley, Thomas R. Conner, David W. Jones, Houston, for Appellees in No. 01–96–01408CV.

Susan K. Cardwell, Mary Angela Meyer, Houston, for Appellees in No. 01–96–01559–CV.

Before ANDELL, TAFT and PRICE.*

## OPINION

TAFT, Justice.

Appellant, Levi Lee Laub (Levi), appeals from summary judgments granted to appellees in these cases, Dr. Richard Pesikoff and Dr. Rita Justice, Ph.D. We consider (1) whether Levi's claims are barred by the judicial communication privilege and (2) whether the trial court's award of sanctions against Levi was appropriate. We reform the trial court's judgments, and as reformed, affirm.

### Factual and Procedural Background

These appeals arise out of a divorce proceeding styled *In the Matter of the Marriage of Mary Maher Laub and Levi Lee Laub*, filed by Mary Laub (Mary) on January 4, 1995.[1] On January 9, 1996, Levi filed a motion for partial summary judgment, requesting the court to uphold certain gifts allegedly made by Mary to Levi during their marriage. Levi alleged that, on or about September 7, 1984, Mary signed a quitclaim gift deed conveying to him a one-half interest in parcels of real property located in Houston. Levi also alleged that, on or about June 7, 1990, he and Mary signed a memorandum of gift to "confirm" that, in 1984, Mary had made a gift to Levi of a one-half interest in a securities portfolio that she inherited from her father. In his motion, Levi argued that he owned a one-half interest in the real property and the securities portfolio as his sole and separate property.

On January 29, 1996, Mary filed a response to Levi's motion for partial summary judgment. She argued that, at the time she executed the quitclaim gift deed and the memorandum of gift, she did not possess the requisite donative intent to make those transfers. In support of this position, Mary attached the affidavits of Dr. Richard Pesikoff, her treating psychiatrist, and Dr. Rita Justice, her treating psychologist. In their affidavits, both Dr. Pesikoff and Dr. Justice expressed opinions concerning Mary's mental health and its effect on her ability to enter into the 1984 and 1990 agreements. Specifically, the affidavits stated that Mary revealed to the doctors that Levi had physically abused her in the past. Both affidavits concluded that, if not for her reduced mental capacity resulting from Levi's abusive behavior, she would never have entered into the agreements at issue in the divorce proceeding.

On February 14, 1996, Levi filed an amended cross-petition in which he asserted third-party actions against Dr. Pesikoff and Dr. Justice based on the statements contained in their affidavits. Levi asserted multiple claims against both Dr. Pesikoff and Dr. Justice, including (1) "intentional" libel and slander; (2) intentional infliction of emotional distress; (3) engaging in a conspiracy to defraud Levi of his property by making false statements; (4) denial of due process under the United States and Texas Constitutions; and (5) tortious interference with the con-

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. An appeal of the judgment in the divorce proceeding is pending before this court as *Laub v. Laub*, 01–97–00386–CV.

tractual relationship between Levi and Mary. In addition, Levi asserted a negligence claim against Dr. Justice, based on an alleged doctor-patient relationship arising from therapy sessions he attended in conjunction with Mary's treatment.

## A. Dr. Pesikoff's Summary Judgment

On June 4, 1996, Dr. Pesikoff filed a motion for summary judgment, claiming that his affidavit, submitted in the course of a judicial proceeding, was protected by the judicial communications privilege and, therefore, could not serve as the basis for any tort action. On August 26, 1996, the trial court granted Dr. Pesikoff's motion for summary judgment. The summary judgment was amended on September 20, 1996, with an award of sanctions in the amount of $86,-251.26, representing attorney's fees and costs, pursuant to rule 13 of the Texas Rules of Civil Procedure and chapter 10 of the Texas Civil Practice and Remedies Code. TEX.R.CIV.P. 13; TEX.CIV.PRAC. & REM.CODE ANN. §§ 10.001–.006 (Vernon Supp.1998).

## B. Dr. Justice's Summary Judgment

On June 7, 1996, Dr. Justice filed a motion for summary judgment, which, like Dr. Pesikoff's, asserted the judicial communication privilege. On September 16, 1996, Dr. Justice filed an additional motion for partial summary judgment, claiming that Levi's negligence claims were barred by the applicable statute of limitations. On September 20, 1996, the trial court signed an order granting both of Dr. Justice's motions for summary judgment, and ordering sanctions in the amount of $27,973.04 against Levi, representing attorney's fees and costs incurred by Dr. Justice in defending the suit.

### Granting of Summary Judgments

In Levi's first point of error, he asserts that the trial court erred in granting summary judgment for Drs. Pesikoff and Justice. He argues that, based on Texas case law, the judicial communication privilege does not protect the intentional and malicious statements made by Drs. Pesikoff and Justice in their affidavits.

■ Summary judgment is proper if the summary judgment record shows there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). Summary judgment exists to eliminate patently unmeritorious claims or untenable defenses, not to deprive litigants of their right to a full hearing on any real issue of fact. *See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952). In reviewing the propriety of a summary judgment, we are bound by these standards: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant, and any doubts must be resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ At common law, the absolute immunity of parties and witnesses from subsequent liability for their testimony in judicial proceedings is well established. *Briscoe v. La-Hue,* 460 U.S. 325, 331–32, 103 S.Ct. 1108, 1113, 75 L.Ed.2d 96 (1983). Any communication, even perjured testimony, made in the course of a judicial proceeding, cannot serve as the basis for a suit in tort. *See Bird v. W.C.W.,* 868 S.W.2d 767, 771 (Tex.1994); *Leigh v. Parker,* 740 S.W.2d 101, 103 (Tex. App.—Austin 1987, writ denied). The proper administration of justice requires full and free disclosure from witnesses unhampered by fear of retaliatory lawsuits. *Bird,* 868 S.W.2d at 772.

■ Levi argues that the judicial communication privilege is limited to defamation actions based on negligence, and does not extend to the "intentional" claims he asserts against Drs. Pesikoff and Justice. He cites no cases so limiting the privilege, relying instead on "loose language" in several Texas decisions, and upon several statutory sections that he claims evince a policy to restrict the

privilege.[2]

■ Although most cases addressing the judicial communication privilege involve claims of libel or slander, Texas courts have consistently applied the privilege to claims arising out of communications made in the course of judicial proceedings, regardless of the label placed on the claim.[3] In *Bird*, the Texas Supreme Court considered the effect of the privilege on an affidavit filed by a psychologist in a family law matter. 868 S.W.2d at 768. In the affidavit, the psychologist concluded that her patient had been abused. *Id.* When the abuse charges were later dropped, the family member sued the psychologist for negligence. *Id.* The court found that the affidavit was privileged and noted that, although the plaintiff's claims were couched in terms of negligent misdiagnosis, the essence of the claim was that the psychologist's *communication* of her diagnosis caused the damages of which the plaintiff complained. *Id.* at 772, 767–68. In reaching its decision, the court cited with approval *Doe v. Blake*, 809 F.Supp. 1020, 1028 (D.Conn.1992), which recognized that the privilege must extend beyond defamation actions in order to "avoid the circumvention [of the policy behind the privilege] by affording an almost equally unrestricted action under a different label." *Id.* at 772.

In *Morales v. Murphey*, 908 S.W.2d 504, 506–507 (Tex.App.—San Antonio 1995, writ denied), the San Antonio Court of Appeals addressed a situation similar to that in *Bird*. In a suit to terminate parental rights, the child's doctor testified that the father had sexually abused the child. *Morales*, 908 S.W.2d at 505. The father subsequently brought suit against the doctor, alleging in-

tentional and negligent infliction of emotional distress and defamation. *Id.* The court found that the father's claims, although couched in different terms, actually attacked the alleged erroneous diagnosis and subsequent communication of the doctor's conclusions to the court. *Id.* at 506–507. The court held that the father's claims were barred by the judicial communication privilege. *Id.*

Levi argues that "loose language" in several Texas decisions supports his position that the privilege does not bar his claims against Drs. Pesikoff and Justice. He first attempts to distinguish the result in *Bird*, arguing that the decision limits the scope of the privilege to "negligent defamation" claims. In addition, he asserts that this Court should follow the "clear directive" contained in Justice Gammage's concurring opinion, which suggested that a qualified, not absolute, privilege should apply. However, our reading of *Bird* leads us to a different conclusion. First, the court did not limit the scope of the privilege to "negligent defamation" claims. *Bird*, 868 S.W.2d at 771. The court held that, although earlier decisions have limited the privilege to libel and slander, the judicial communication privilege cannot be circumvented by disguising a claim under a different label. *Id.* at 771–72. In addition, although Justice Gammage's concurrence cautioned against a grant of absolute immunity upon mental health professionals, the seven-member majority of the court held that "communications made during the course of judicial proceedings are privileged." *Bird*, 868 S.W.2d at 772.

■ Second, Levi refers us to *James v. Brown*, a pre-*Bird* opinion, in which the su-

---

2. Levi argues that the existence of section 261.106 of the Family Code and section 571.019 of the Health and Safety Code provides evidence that the judicial communication privilege is not absolute. Tex Fam.Code Ann. § 261.106 (Vernon 1996) (granting statutory immunity to those who testify in child abuse cases); Tex. Health & Safety Code Ann. § 571.019(a) (Vernon 1992) (addressing liability of mental health providers to those for whom they provide professional services). However, we find that the qualified privileges addressed in those statutes serve different purposes from those of the judicial communications privilege, and, thus, do not act to modify the common law. *See Hernandez v. Hayes*, 931

S.W.2d 648, (Tex.App.—San Antonio 1996, writ denied) (holding that limited statutory immunity in Education Code serves different purpose from that of the quasi-judicial privilege afforded public school employees, and does not protect integrity of process, as does common-law privilege).

3. *See Bird*, 868 S.W.2d at 772; *Morales v. Murphey*, 908 S.W.2d 504 (Tex.App.—San Antonio 1995, writ denied) (holding that judicial communication privilege precludes claims for, *inter alia*, intentional infliction of emotional distress and defamation).

preme court, based on the facts presented, declined to extend the privilege beyond libel and slander. *James v.. Brown*, 637 S.W.2d 914, 918 (Tex.1982). In *James*, a patient who had been involuntarily committed to a mental institution sued her treating psychiatrists alleging, *inter alia*, libel and negligent misdiagnosis. *Id.* at 916. The trial court granted a summary judgment in favor of the psychiatrists on the ground that publication of the doctors' opinions in the mental health and guardianship proceedings was privileged. *Id.* The supreme court affirmed the summary judgment in part and reversed in part, stating:

> While the doctors' communication to the court of their diagnoses of Mrs. James' mental condition, regardless of how negligently made, cannot serve as the basis for a defamation action, the diagnoses themselves may be actionable on other grounds.

*Id. James* does not limit the privilege in the manner suggested by Levi. *James* holds that the communication of allegedly false statements in a judicial proceeding cannot serve as the basis for a defamation action. *Id.* at 917. Although the case does stand for the proposition that a doctor is not immune from a claim for negligent misdiagnosis brought by his or her patient, it does not state that a third-party, such as Levi, can sue a mental health professional for a misdiagnosis of the

professional's patient. Indeed, such an effort was expressly rejected in *Bird*.[4]

Finally, Levi relies on *City of Brady v. Bennie*, another pre-*Bird* opinion, in which the Eastland Court of Appeals held that a letter written by an attorney to an opposing party, although absolutely privileged in a libel action, was not absolutely privileged in a claim for tortious interference with a contract. 735 S.W.2d 275, 279 (Tex. App.—Eastland 1987, no writ). However, other courts have found that the privilege does extend to claims for tortious interference. *Griffin v. Rowden*, 702 S.W.2d 692, 694–95 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (holding that notice of lis pendens, filed as part of a judicial proceeding, is absolutely privileged and cannot form basis for tortious interference claim). *Bird* makes it clear that, to avoid the circumvention of the policy behind the privilege, the privilege should be extended beyond defamation when the essence of a claim is damages that flow from communications made in the course of a judicial proceeding. *See Bird*, 868 S.W.2d at 771.

On appeal, Levi attempts to show that his claims for libel and slander, intentional interference, civil conspiracy, intentional infliction of emotional distress, negligence, and constitutional violations are not merely defamation claims under different labels. However, the essence of each of these claims is that he

---

4. In her motion for partial summary judgment, Dr. Justice argued that she last saw Levi in conjunction with Mary's treatment on April 22, 1993, and, therefore, his negligence claim was filed outside the two-year limitations period. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon Supp.1998). However, the negligent acts of which Levi complained were the statements made in her affidavit, filed in 1996. The statute would begin to run from that date, not the date on which Dr. Justice last saw Levi.

In one order, the trial court granted both this motion and Dr. Justice's earlier motion, which had asserted that Levi's remaining claims failed because of the judicial communication privilege. If the trial court's order does not state the grounds on which summary judgment was granted, as in this case, we will affirm the summary judgment if any of the theories advanced is meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). On appeal, Levi argues that the trial court erred in granting partial summary judgment on the negligence claim,

because he has raised a fact issue as to whether a doctor-patient relationship existed between Doctor Justice and himself. However, Levi's negligence claim is based upon the same judicial communication as his other claims. Those judicial statements related to medical treatment and diagnosis of Dr. Justice's patient of five years, Mary Laub. By raising the doctor/patient issue, Levi may have sought to invoke the reasoning of cases such as *Bird* and *Brown*, which recognize that the judicial communication privilege may not protect a doctor who testifies in a judicial proceeding from a claim of negligent misdiagnosis *brought by his own patient*. *See Bird*, 868 S.W.2d at 771–72; *Brown*, 637 S.W.2d at 918. In this case, Dr. Justice offered her opinions concerning the mental state of Mary, and the factors which impacted upon her mental state. She did not provide a medical diagnosis of Levi, and, therefore, the exception recognized in *Bird* and *Brown* is inapplicable. Therefore, we hold that Levi's negligence claim was properly disposed of based on the judicial communications privilege. *See Bird*, 868 S.W.2d at 771–72.

suffered injury as a result of the *communication* of allegedly false statements during a judicial proceeding. *See Morales,* 908 S.W.2d at 504–05 ("[w]ere it not for the [the psychologist's] communication of her diagnosis, [the father] would have no complaint ...."). We hold that Levi's claims against Drs. Pesikoff and Justice were barred, as a matter of law, by the judicial communications privilege, and that summary judgment was proper as to those claims.

We overrule Levi's first point of error.

### Sanctions

In his second, third, and fourth points of error, Levi claims that the trial court erred in (1) awarding sanctions against him in favor of Drs. Pesikoff and Justice, (2) denying him an opportunity to present a defense to the rule 13 sanctions, and (3) awarding attorney's fees to Drs. Pesikoff and Justice as sanctions.

Hearings were conducted on the sanctions issue on August 13, September 13, and September 20, 1996. During those hearings, Drs. Pesikoff and Justice attempted to show that, because Levi's claims were groundless, brought in bad faith, and for the purpose of harassment, attorney's fees should be awarded against Levi as sanctions. The doctors alleged that Levi's claims were groundless because they were clearly barred by the judicial communication privilege, and that his arguments did not request a reasonable extension or modification of existing law. The doctors claimed the suits were brought in an attempt to coerce them into changing their sworn affidavit testimony.

Levi's counsel and counsel for both doctors testified at the hearings. Counsel for Dr. Pesikoff testified that he had been approached by Levi's counsel, who offered to nonsuit Dr. Pesikoff if he would modify his earlier affidavit to state that he could not render opinions regarding Mrs. Laub's condition prior to the date his treatment began.

Dr. Justice's counsel testified that Levi's counsel made a similar offer to her client in writing.[5] Upon reading the proposed affidavit language submitted to Dr. Justice by Levi's counsel, the trial court informed Levi's counsel of his right to remain silent, in response to accusations that the witness tampering statute may have been violated. *See* TEX.PENAL CODE ANN. § 36.05 (Vernon 1994). Levi's counsel denied these allegations, and contends on appeal that the proposed affidavit merely clarified issues raised in the original affidavit, and was suggested as part of a settlement offer.

On September 20, 1996, the trial court granted summary judgments to both Dr. Pesikoff and Dr. Justice. In separate orders, the court awarded $27,973.04 as sanctions against Levi in favor of Dr. Justice, and $86,251.26 against Levi in favor of Dr. Pesikoff. These amounts represent the attorney's fees incurred by counsel for Drs. Pesikoff and Justice, as found by the court. The trial court's orders state that the sanctions were awarded pursuant to rule 13 of the Texas Rules of Civil Procedure *and* chapter 10 of the Texas Civil Practice and Remedies Code. TEX.R.CIV.P. 13; TEX.CIV.PRAC. & REM. CODE ANN. §§ 10.001–.006.

### A. Chapter 10 as a Basis for Sanctions

■ Before addressing Laub's points of error challenging the award of sanctions, we note that chapter 10 of the Texas Civil Practice and Remedies Code was an improper basis upon which to award sanctions in this case. Chapter 10 applies only to pleadings and motions filed in cases commenced on or after September 1, 1995. TEX.CIV.PRAC. & REM .CODE ANN. § 10.001 (Vernon Supp.1998) (historical note). Although Levi's first amended cross-petition, in which Levi first raised his claims against Drs. Pesikoff and Justice, was filed in February 1996, Mary's original petition for divorce and Levi's original cross-petition were both filed prior to

---

**5.** The substitute language proposed by Levi's counsel is as follows:

"It was not and is not my opinion that Mary Laub has, at any time, been incompetent or insane or of unsound mind. On the contrary, it is my opinion that she was not, at any time, incompetent, insane or of unsound mind since she became my patient, and I have no reason to believe she was otherwise before she became my patient. So far as I know, she has always been capable of caring for herself, managing her affairs and assisting counsel in litigation."

September 1, 1995. Therefore, because rule 13 was the only ground upon which the trial court could have based its award of sanctions, we limit our analysis to that issue.

## B. Rule 13 as a Basis for Sanctions

 In his second point of error, Levi alleges that the trial court erred in awarding sanctions against him in favor of Drs. Pesikoff and Justice. We review a court's order of rule 13 sanctions under an abuse of discretion standard. *Lawrence v. Kohl*, 853 S.W.2d 697, 699 (Tex.App.—Houston [1st Dist.] 1993, no writ). The test for determining if the trial court abused its discretion is whether the trial court acted without reference to any guiding rules or principles. *Aldine Indep. Sch. Dist. v. Baty*, 946 S.W.2d 851, 852 (Tex.App.—Houston [14th Dist.] 1997, no writ).

 Pursuant to rule 13, a court may impose sanctions against a party, a party's attorney, or both, if they file pleadings, motions, or other papers that are both groundless *and* either (1) brought in bad faith or (2) for the purpose of harassment. *Lawrence*, 853 S.W.2d at 699. The rule further provides that the court may impose any appropriate sanction available under TEX.R.CIV.P. 215(2)(b), including the assessment of attorney's fees. *Lawrence*, 853 S.W.2d at 699. "Groundless" means without basis in law or fact and not warranted by a good faith argument for an extension, modification, or reversal of existing law. *Miller v. Armogida*, 877 S.W.2d 361, 365 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

Drs. Pesikoff and Justice argue that Levi's claims were groundless because the judicial communication privilege clearly bars the claims which Levi has raised in this case. They refer us to a series of letters, in which defense counsel notified Levi's counsel of this fact, exchanged between the parties prior to the filing of the motions for summary judgment. They also argue that Levi never specifically argued for an extension, modification, or reversal of Texas law. In addition, they claim that, because the evidence shows that Levi's claims were brought only to intimidate Drs. Pesikoff and Justice and to coerce them into changing their testimony,

the suit was brought in bad faith and for an improper purpose.

Clearly, rule 13 is a tool that must be available to trial courts in those egregious situations where the worst of the bar uses our system for ill motive without regard to reason and the guiding principles of the law. *Dyson Descendant Corp. v. Sonat Exploration Co.*, 861 S.W.2d 942, 951 (Tex.App.—Houston [1st Dist.] 1993, no writ). The rule, however, cannot become a weapon used to punish those with whose intellect or philosophic viewpoint the trial court finds fault. *Id.* Innovative changes in the law or applications of the law must by necessity come from creative and innovative sources. *Id.* By their very definition, changes in the law are different from and in disagreement with what has been historically accepted. *Id.* We cannot allow rule 13 to have a chilling effect on those who seek change in legal precedent. *Id.*

 Before reaching the issue of whether harassment or bad faith existed in any given case, the trial court must first find that the claims brought by the party to be sanctioned are groundless. TEX.R.CIV.P. 13. Although Levi has not specifically argued that adopting his position would call for a modification, extension, or reversal of existing law, his claims are not patently unmeritorious or frivolous, with no arguable basis in law or fact. Although we hold today that Levi's claims are barred by the judicial communications privilege, he has argued that they are not, based in part on Justice Gammage's concurrence in *Bird* and on other cases and statutes which he claims support his position.

As stated earlier, most Texas decisions in this area involve claims of defamation. Levi correctly points out that many Texas decisions involve negligent conduct, as opposed to intentional conduct, as alleged here. In addition, Justice Gammage's concurrence in *Bird* may not constitute a "directive," but it did urge that a qualified privilege, not an absolute privilege, should apply. Based on the state of the law surrounding the judicial communication privilege, Levi's arguments, although unsuccessful, are not "groundless" as contemplated by rule 13. As this Court stated in *Dyson*, we should not allow rule 13

to have a chilling effect on those who seek change in legal precedent. 861 S.W.2d at 951. Therefore, we hold that, to the extent that the court based its award of sanctions on rule 13, it abused its discretion.

We sustain Levi's second point of error. Because we so hold, we need not address Levi's third and fourth points of error which also challenge the sanctions award.

### Findings of Fact

 In his fifth point of error, Levi claims that the trial court erred in failing to make findings of fact and conclusions of law. However, findings of fact and conclusions of law have no place in a summary judgment hearing. *Linwood v. NCNB Texas*, 885 S.W.2d 102, 103 (Tex.1994). Accordingly, we overrule Levi's fifth point of error.

### Award of Sanctions Against Drs. Pesikoff and Justice

In his sixth point of error, Levi contends the trial court erred in not awarding sanctions against Drs. Pesikoff and Justice. He argues that the assertions by Drs. Pesikoff and Justice that Levi's actions were groundless were, themselves, groundless as a matter of law. However, he cites no authority and does not reference any portion of the record that supports his position. Therefore, we hold that he has waived any error on this point. *Metzger v. Sebek*, 892 S.W.2d 20, 45 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

We overrule Levi's sixth point of error.

### Conclusion

We reform the trial court's judgment in cause number 95–00198A by deleting both the $86,251.26 in sanctions awarded to Dr. Pesikoff and the findings of fact upon which those sanctions were based. Likewise, we reform the trial court's judgment in cause number 95–00198B by deleting both the $27,-973.04 in sanctions awarded to Dr. Justice and the findings of fact upon which those sanctions were based. As reformed, we affirm both judgments of the trial court.