Burger v. Burger

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-170-CV

BARBARA HIX BURGER APPELLANT

V.

LELAND L. BURGER APPELLEE

------------

FROM THE 324TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In this family law case, Barbara Hix Burger appeals the trial court’s divorce decree.  In two issues, she complains that the trial court abused its discretion by making a manifestly unfair division of the community marital estate and erred by failing to find that appellee Leland L. Burger had committed interspousal torts.  We affirm.

The law applicable to this case is well settled, and the facts are well known to the parties.

Barbara and Leland married in 1981 and had two children, only one of whom was a minor at the time of the divorce.  Barbara is a school teacher; Leland owns a consulting business. 

After seven years of marriage, the parties purchased a home.  They made a $32,000 down payment, part of which came from their community savings and part of which came from Barbara’s teacher retirement system (TRS) account.  Barbara testified that over $11,000 of the down payment was from her TRS account.  Some of the TRS funds were Barbara’s separate property because they were contributions she had made into the account for seven years before marriage; part of the TRS funds were community property because Barbara had contributed to the account for four years after the parties’ marriage.  The exact amount of the pre-marriage contributions was not proven at trial; however, Leland testified that the pre-marriage contributions were around $8,000. 

At the end of 1998, Leland had a dispute with his employer and, in January 1999, decided not to renew his contracts with the company.  He made this decision after discussion with Barbara and while the parties were still happily married.  About this same time, Leland also underwent complete knee replacement surgery, which required six or more months of rehabilitation at five to six hours a day.  His income was adversely affected as a result. 

The parties separated in November 1999, and Barbara sought a divorce on the no-fault ground of insupportability.  At the time of separation, the parties’ marital estate consisted of their residence and two automobiles, all of which were paid for, Barbara’s TRS and 403B accounts, Leland’s 401K account, a joint savings account containing approximately $79,500, and a business account under Leland’s control containing approximately $20,000.
(footnote: 2)
 Meanwhile, about six months before their November 1999 separation, the parties began having arguments regarding the frequency with which Barbara slept with their then eleven-year-old son and her attire while doing so.  The arguments escalated to the point that Leland once gave Barbara what he described as a “motivational kick in the butt” or “just a pat.”  Conversely, Barbara testified that Leland had once attempted to kick her unsuccessfully and had succeeded in kicking her on another occasion, causing pain and a small bruise.  Leah, the parties’ nineteen-year-old daughter, testified that she had witnessed her father having “a temper,” but had never seen him strike Barbara. 

In September 2001, Barbara amended her pleadings to add cruel treatment by Leland as an additional ground for divorce.  She also alleged causes of action against Leland for intentional infliction of emotional distress and libel and slander.  Both of these claims were based on Leland’s allegedly false allegations, made during the pendency of the divorce proceeding, regarding Barbara’s inappropriate conduct with the parties’ son.  Barbara did not plead a cause of action for assault and battery based on Leland’s alleged kicking of her. 

After a bench trial, the trial court rendered its divorce decree, in which it ordered that the marital residence be sold and that Barbara and Leland each receive half of the net proceeds.  The trial court also awarded the following property, among other things, to Leland as his separate property:

•All cash in his possession or subject to his sole control, including bank accounts;

•His 401K and individual retirement accounts;

•Thirty-five percent of the community interest in Barbara’s teacher retirement account;

•Thirty-five percent of the community interest in Barbara’s 403B account. 

The trial court awarded the following property, among other things, to Barbara as her separate property:

•All cash in her possession or subject to her sole control, including bank accounts;

•Her individual retirement account;

•Sixty-five percent of the community interest in her teacher retirement and 403B accounts. 

Further, the trial court confirmed that Barbara’s inheritance from her mother, Ruth Hix, was Barbara’s separate property. 

Finally, the trial court found that Barbara had depleted the parties’ community savings worth approximately $79,500 during the pendency of the divorce proceeding without just cause and awarded Leland a judgment against Barbara for $21,989 “in order to do equity in the matter of the mis-spent community savings.” 

In addition to the property division, the divorce decree enjoins Barbara, in accordance with the parties’ trial agreement, from sharing the same bed with the parties’ son before the child’s eighteenth birthday or his emancipation. Moreover, the trial court did not grant Barbara any relief on her claims for intentional infliction of emotional distress and libel and slander.  This appeal followed. 

In her first issue, Barbara asserts that the division of the marital estate is not just and right.  She contends that the trial court improperly failed to give her a credit against the value of the marital residence for the $8,000 to $11,000 of her separate property that was used as a down payment for the home and argues that she should have been awarded the marital residence as a necessary for the children.  She further contends that the trial court  abused its discretion by failing to award her past-due back child support.
(footnote: 3) 

A trial court has broad discretion in dividing the marital estate in a manner that the court deems just and right.
(footnote: 4)  Absent a clear abuse of that discretion, we will not disturb a trial court’s property division.
(footnote: 5)
 A trial court does not abuse its discretion unless it acts arbitrarily or unreasonably, without reference to any guiding rules or principles.
(footnote: 6)  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.
(footnote: 7)  An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence.
(footnote: 8)  Further, an abuse of discretion does not occur as long as some evidence of substantive and probative character supports the trial court’s decision.
(footnote: 9)
 When a trial court renders judgment dividing the parties’ the marital estate in a divorce proceeding, the court must, upon request, state in writing its findings of fact and conclusions of law concerning the characterization and value of the portion of marital estate on which disputed evidence has been presented.
(footnote: 10)  In this case, neither party requested findings of fact and conclusions of law following rendition of the divorce decree; therefore, the trial court’s divorce decree implies all findings necessary to support it.
(footnote: 11)  If the trial court’s implied findings are supported by the evidence, it is our duty to
 uphold the property division on any theory of law applicable to the case.
(footnote: 12)
 Barbara contends that Leland owed, but did not pay, child support “for two full years” while the divorce proceeding was pending.  
The record shows that the trial court first ordered Leland to pay Barbara $564 a month in child support in January or February 2002 and that Leland was current in his child support payments at the time of trial. 
 Five hundred sixty-four dollars times twenty-four months—i.e., the two years’ past-due child support Barbara contends she is due—equals $13,536.  Barbara also contends that the trial court improperly failed to reimburse her for the $11,000 that she contributed from her TRS account to the down payment on the parties’ residence and to award her part of Leland’s business bank account (valued at approximately $20,000 upon separation) because that account was community property. When the amount of the alleged past-due child support, $11,000, and $10,000 (one-half of the business account) are subtracted from the $79,500 that the trial court held Barbara mis-spent while the divorce was pending, $
44,964 remains.  Divided equally, $44,964 yields $22,482.  Yet Leland received a judgment for only $21,989 against Barbara for the mis-spent community savings.  Therefore, the evidence supports the trial court’s implied findings concerning the character and value of the marital estate and shows that the trial court did not abuse its discretion by making the property division.

Further, under the circumstances of this case, we hold that the trial court did not abuse its discretion by failing to award Barbara the marital residence as a “necessary for the children.”  Barbara’s income of $40,000-plus per year as a school teacher had remained constant throughout the pendency of the divorce proceeding
, whereas Leland’s had fluctuated due to his health and a pre-divorce decision—with Barbara’s input—not to renew an employment contract.  In addition, the parties’ only minor child was sixteen at the time the divorce decree was rendered, Leland was paying Barbara $564 per month in child support, and Barbara had at her disposal a one-third interest in her mother’s $700,000 estate.
(footnote: 13)
 Accordingly, for all of these reasons, we hold that the trial court did not abuse its discretion in dividing the martial estate.  We overrule Barbara’s first issue.

In her second issue, Barbara complains that the trial court “erred and abused its discretion when it failed to find interspousal torts.” 

Barbara sued Leland for intentional infliction of emotional distress and libel and slander.  The trial court’s rulings on Barbara’s tort claims are separate from the trial court’s property division; therefore, we review those findings for legal and factual sufficiency of the evidence, not for an abuse of discretion.
(footnote: 14)
 Where, as here, 
no findings of fact or conclusions of law were filed, the trial court’s judgment implies all findings of fact necessary to support it.
(footnote: 15)  If 
the implied fact findings are supported by the evidence, it is our duty to uphold the judgment on any theory of law applicable to the case.
(footnote: 16)
 Because Barbara had the burden of proof at trial on her tort claims, to prevail in her legal sufficiency challenge on appeal, she must demonstrate that she proved all elements of these causes of action as a matter of law.
(footnote: 17)  
To prevail in her factual sufficiency challenge, she must show that the trial court’s finding that Leland did not commit the torts is against the great weight and preponderance of the evidence.
(footnote: 18)  
In reviewing whether a finding is against the great weight and preponderance of the evidence, we must consider and weigh all of the evidence and set aside the finding only if the evidence is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust.
(footnote: 19)
 Barbara does not make any arguments or cite any legal authority to support her challenge to the trial court’s adverse finding on her libel and slander claim.  Therefore, we will limit our evidentiary review to Barbara’s claim for intentional infliction of emotional distress.
(footnote: 20)
 The elements of intentional infliction of emotional distress are:  1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the defendant’s actions caused the plaintiff emotional distress, and 4) the emotional distress was severe.
(footnote: 21)  Liability for outrageous conduct should be found “only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.”
(footnote: 22) 
Harassing and retaliatory conduct, without more, is insufficient to support a cause of action for intentional infliction of emotional distress.
(footnote: 23)
 Barbara contends that Leland’s conduct was extreme and outrageous because he admitted to giving her a “motivational kick,” which she testified caused her pain and bruising; Leland made unfounded allegations of sexual improprieties between Barbara and the parties’ son; Barbara had to report Leland’s comments made before her to the school where she was employed, causing her fear, humiliation, and embarrassment and affecting her employment; and Leland persisted in calling Barbara “Jocasta Queen of Thieves” and writing this name on child support checks, notes, and letters to her.

As we have discussed, there is conflicting testimony regarding the kick. Leland testified that it was “motivational” and “just a pat.”  Barbara, on the other hand, testified that Leland attempted to kick her on at least two occasions—once successfully—and that the successful kick caused pain and a small bruise. 

There is also conflicting testimony regarding Leland’s use of the name “Jocasta.”  Leland testified that, in Greek mythology, Jocasta was both the mother and the wife of Oedipus.
(footnote: 24)  Leland further testified that Jocasta was a pet name for Barbara which he had used both before and after the divorce petition was filed.  Leland testified that, although the name seemed “applicable” to Barbara, he did not mean anything derogatory by it.  Conversely, Barbara testified that she had never heard the name before the parties separated and had to research its meaning on the Internet. 

Finally, Leland testified that a primary reason for the parties’ marital troubles was Barbara’s refusal to stop sleeping with their eleven-year-old son on a regular basis and sometimes in inappropriate attire.  Leland believed the sleeping arrangement needed to end and that “bad things [could] happen” as a result of it due to the boy’s increasing age.  Leland further testified that he had witnessed the child touch Barbara’s breast while the two of them were wrestling. 

Leland acknowledged that he had written Barbara an email or letter in which he threatened to tell the school where she worked about this alleged behavior.  But despite making this threat, Leland denied ever mentioning Barbara’s conduct to anyone except his attorneys and a court-appointed psychologist, and there is no evidence controverting this testimony.  Indeed, Barbara testified that she, not Leland, reported Leland’s allegations to her employer.  Any communications that Leland made during the divorce proceeding to attorneys or court-appointed experts are absolutely privileged, and he cannot be held liable to Barbara for them, even if they were untrue and made maliciously.
(footnote: 25)
 Further, although Barbara denied ever acting inappropriately with her son, she admitted that she slept with him frequently.  She claimed, however, that this was due to his many physical ailments, fears, and nightmares.  In addition, she gave inconsistent reasons for reporting Leland’s allegations to her school district.  She first testified, without elaboration, that she “had” to report Leland’s allegations to her school, but then stated, “I wanted to report it . . . because of security issues about [Leland’s] behavior.  I was very frightened for the children that I work with.”  Finally, although Barbara opined that her sleeping with her son was “a very socially acceptable parenting skill” due to his ailments, she admitted that she had not slept with him since filing for divorce.  Barbara also acknowledged that she had agreed to an injunction enjoining her from sleeping with the child until after he reached adulthood. 

Having reviewed the evidence, we hold that it does not establish as a matter of law that Leland engaged in extreme and outrageous conduct, nor does it show that the trial court’s implied finding on this element of Barbara’s intentional infliction claim is against the great weight and preponderance of the evidence.
(footnote: 26)  Many of Leland’s statements were absolutely privileged, and Barbara’s own testimony regarding her sleeping arrangements with her son and the injunction to which she agreed shows that Leland’s complaints about her conduct were not extreme and outrageous.  

In addition, even if the trial court believed Barbara’s version of events about the kick and the use of the name “Jocasta” and disbelieved Leland’s, these actions amounted to no more than harassing conduct, which by itself is insufficient to establish Barbara’s intentional infliction of emotional distress claim.
(footnote: 27)  Accordingly, the evidence is legally and factually sufficient to support the trial court’s finding that Leland did not commit intentional infliction of emotional distress.  We overrule Barbara’s second issue.

Having overrule both of Barbara’s issues, we affirm the trial court’s divorce decree.

PER CURIAM

PANEL A: CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  March 2, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
There is no record support for Barbara’s assertion that the business account contained $35,000 at the time of the parties’ separation.  

3:
Barbara’s argument that the division of the retirement accounts is unfair because she cannot collect both teacher retirement and social security benefits was not raised in the trial court; therefore, even assuming that this argument is correct, the trial court did not abuse its discretion by failing to take it into consideration when making the property division.  
See Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).

4:
Tex. Fam. Code Ann.
 § 7.001 (Vernon 1998); 
Murff v. Murff,
 615 S.W.2d 696, 698 (Tex. 1981); 
Boyd v. Boyd,
 67 S.W.3d 398, 406 (Tex. App.—Fort Worth 2002, no pet.).

5:
Bell v. Bell,
 513 S.W.2d 20, 22 (Tex. 1974); 
Boyd,
 67 S.W.3d at 406.

6:
Downer
, 701 S.W.2d at 241-42.

7:
Id
.

8:
Davis v. Huey
, 571 S.W.2d 859, 862 (Tex. 1978); 
see also Goode v. Shoukfeh
, 943 S.W.2d 441, 446 (Tex. 1997).

9:
Butnaru v. Ford Motor Co.
, 84 S.W.3d 198, 211 (Tex. 2002).

10:
Tex. Fam. Code Ann.
 § 6.711(a) (Vernon Supp. 2005).

11:
Pharo v. Chambers County
, 922 S.W.2d 945, 948 (Tex. 1996).

12:
Worford v. Stamper
, 801 S.W.2d 108, 109 (Tex. 1990); 
Point Lookout W., Inc. v. Whorton
, 742 S.W.2d 277, 278 (Tex. 1987).

13:
See Murff,
 615 S.W.2d at 699 (holding that trial court may take size of parties’ separate estates into consideration in dividing marital estate).  The sole case on which Barbara relies as support for her position does not require a different result.  The wife in that case had two minor children living at home, was earning significantly less than the husband, and was awarded 
an amount in community debts more than twice that of the husband.  
See Cunningham v. Cunningham,
 
515 S.W.2d 345, 346 (Tex. Civ. App.—Corpus Christi 1974, no writ).

14:
See
 
Tex. Fam. Code Ann.
 § 7.001 (providing for trial court discretion only in division of marital estate); 
Twyman v. Twyman,
 855 S.W.2d 619, 625 (Tex. 1993) (holding that, to avoid double recovery, trial court may not base division of marital property and award of tort damages on same tortious conduct); 
Roberson v. Robinson,
 768 S.W.2d 280, 281 (Tex. 1989) (stating that standard of review applicable to trial court’s findings in bench trial is the same as that applied to jury findings).

15:
Pharo
, 922 S.W.2d at 948.

16:
Worford
, 801 S.W.2d at 109; 
Point Lookout W., Inc.
, 742 S.W.2d at 278.

17:
Dow Chem. Co. v. Francis,
 46 S.W.3d 237, 241 (Tex. 2001).

18:
Gooch v. Am. Sling Co.
, 902 S.W.2d 181, 184 (Tex. App.—Fort Worth 1995, no writ).

19:
Dow Chem. Co.
, 46 S.W.3d at 242; 
In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

20:
See
 
Tex. R. App. P.
 38.1(h) (requiring clear and concise arguments supporting complaints on appeal, with appropriate citations to authorities and the record); 
Fredonia State Bank v. Gen. Am. Life Ins. Co.,
 881 S.W.2d 279, 284 (Tex. 1994) (discussing long-standing rule that point may be waived due to inadequate briefing).

21:
Twyman,
 855 S.W.2d at 621.

22:
Id.

23:
Amador v. Tan,
 855 S.W.2d 131, 135 (Tex. App.—El Paso 1993, writ denied).

24:
Although Barbara contends that Leland referred to her as “Jocasta Queen of Thieves,” it is unclear from the record whether Leland said “queen of 
thieves
” or “queen of 
Thebes
.”  We take judicial notice that the dictionary defines the term “Jocasta” as “a queen of 
Thebes
 who marries Oedipus not knowing that he is her son.”  
Merriam Webster’s Collegiate Dictionary
 630 (10th ed. 1994) (emphasis supplied); 
see
 
Tex. R. Evid.
 201(b), (c).

25:
See Bird v. W.C.W.,
 868 S.W.2d 767, 771-72 (Tex. 1994); 
James v. Brown,
 637 S.W.2d 914, 916 (Tex. 1982); 
Reagan v. Guardian Life Ins. Co.,
 140 Tex. 105, 166 S.W.2d 909, 912 (1942).  Although most cases addressing the judicial communications privilege involve defamation claims, Texas courts have consistently applied the privilege to all types of claims arising out of communications made in the course of judicial proceedings, regardless of the labels placed on them.  
See Bird,
 868 S.W.2d at 771-72 
(extending absolute privilege beyond defamation cases to bar suits in which damages sought are basically “defamation damages,” in order to avoid the “circumvention [of the policy behind the privilege] by affording an almost equally unrestricted action under a different label”); 
5-State Helicopters, Inc. v. Cox,
 146 S.W.3d 254, 259 (Tex. App.—Fort Worth 2004, pet. denied) (applying absolute privilege bar to claim for tortious interference with contract); 
Laub v. Pesikoff,
 979 S.W.2d 686, 691-92 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding that defendant could not be held liable for intentional infliction of emotional distress based on communications made during course of judicial proceeding).

26:
See Dow Chem Co.,
 46 S.W.3d at 241-42.

27:
Amador,
 855 S.W.2d at 135.