COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-170-CV

 

 

BARBARA HIX BURGER                                                        APPELLANT

 

                                                   V.

 

LELAND L. BURGER                                                                APPELLEE

 

                                              ------------

 

           FROM
THE 324TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In this family law case,
Barbara Hix Burger appeals the trial court=s divorce decree.  In two
issues, she complains that the trial court abused its discretion by making a
manifestly unfair division of the community marital estate and erred by failing
to find that appellee Leland L. Burger had committed interspousal torts.  We affirm.








The law applicable to this
case is well settled, and the facts are well known to the parties.

Barbara and Leland married in
1981 and had two children, only one of whom was a minor at the time of the
divorce.  Barbara is a school teacher;
Leland owns a consulting business. 

After seven years of
marriage, the parties purchased a home. 
They made a $32,000 down payment, part of which came from their
community savings and part of which came from Barbara=s teacher retirement system (TRS) account.  Barbara testified that over $11,000 of the
down payment was from her TRS account. 
Some of the TRS funds were Barbara=s separate property because they were contributions she had made into
the account for seven years before marriage; part of the TRS funds were
community property because Barbara had contributed to the account for four
years after the parties=
marriage.  The exact amount of the
pre-marriage contributions was not proven at trial; however, Leland testified
that the pre-marriage contributions were around $8,000. 








At the end of 1998, Leland
had a dispute with his employer and, in January 1999, decided not to renew his
contracts with the company.  He made this
decision after discussion with Barbara and while the parties were still happily
married.  About this same time, Leland
also underwent complete knee replacement surgery, which required six or more
months of rehabilitation at five to six hours a day.  His income was adversely affected as a
result. 

The parties separated in
November 1999, and Barbara sought a divorce on the no-fault ground of
insupportability.  At the time of
separation, the parties= marital
estate consisted of their residence and two automobiles, all of which were paid
for, Barbara=s TRS and
403B accounts, Leland=s 401K
account, a joint savings account containing approximately $79,500, and a
business account under Leland=s control containing approximately $20,000.[2]

Meanwhile, about six months
before their November 1999 separation, the parties began having arguments
regarding the frequency with which Barbara slept with their then
eleven-year-old son and her attire while doing so.  The arguments escalated to the point that
Leland once gave Barbara what he described as a Amotivational kick in the butt@ or Ajust a pat.@  Conversely, Barbara testified
that Leland had once attempted to kick her unsuccessfully and had succeeded in
kicking her on another occasion, causing pain and a small bruise.  Leah, the parties= nineteen-year-old daughter, testified that she had witnessed her
father having Aa temper,@ but had never seen him strike Barbara. 








In September 2001, Barbara
amended her pleadings to add cruel treatment by Leland as an additional ground
for divorce.  She also alleged causes of
action against Leland for intentional infliction of emotional distress and
libel and slander.  Both of these claims
were based on Leland=s allegedly
false allegations, made during the pendency of the divorce proceeding,
regarding Barbara=s
inappropriate conduct with the parties= son.  Barbara did not plead a
cause of action for assault and battery based on Leland=s alleged kicking of her. 

After a bench trial, the
trial court rendered its divorce decree, in which it ordered that the marital
residence be sold and that Barbara and Leland each receive half of the net
proceeds.  The trial court also awarded
the following property, among other things, to Leland as his separate property:

$All
cash in his possession or subject to his sole control, including bank accounts;

 

$His
401K and individual retirement accounts;

 

$Thirty-five
percent of the community interest in Barbara=s teacher retirement account;

 

$Thirty-five
percent of the community interest in Barbara=s 403B account. 

 

The trial court awarded the following property,
among other things, to Barbara as her separate property:








$All
cash in her possession or subject to her sole control, including bank accounts;

 

$Her
individual retirement account;

 

$Sixty-five
percent of the community interest in her teacher retirement and 403B accounts. 

 

Further, the trial court confirmed that Barbara=s inheritance from her mother, Ruth Hix, was Barbara=s separate property. 

Finally, the trial court
found that Barbara had depleted the parties= community savings worth approximately $79,500 during the pendency of
the divorce proceeding without just cause and awarded Leland a judgment against
Barbara for $21,989 Ain order to
do equity in the matter of the mis-spent community savings.@ 

In addition to the property
division, the divorce decree enjoins Barbara, in accordance with the parties= trial agreement, from sharing the same bed with the parties= son before the child=s eighteenth birthday or his emancipation. Moreover, the trial court
did not grant Barbara any relief on her claims for intentional infliction of
emotional distress and libel and slander. 
This appeal followed. 








In her first issue, Barbara
asserts that the division of the marital estate is not just and right.  She contends that the trial court improperly
failed to give her a credit against the value of the marital residence for the
$8,000 to $11,000 of her separate property that was used as a down payment for
the home and argues that she should have been awarded the marital residence as
a necessary for the children.  She
further contends that the trial court 
abused its discretion by failing to award her past-due back child
support.[3]


A trial court has broad
discretion in dividing the marital estate in a manner that the court deems just
and right.[4]  Absent a clear abuse of that discretion, we
will not disturb a trial court=s property division.[5]








A trial court does not abuse
its discretion unless it acts arbitrarily or unreasonably, without reference to
any guiding rules or principles.[6]  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court
would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.[7]  An abuse of discretion does not occur where
the trial court bases its decision on conflicting evidence.[8]  Further, an abuse of discretion does not
occur as long as some evidence of substantive and probative character supports
the trial court=s decision.[9]

When a trial court renders
judgment dividing the parties= the marital estate in a divorce proceeding, the court must, upon
request, state in writing its findings of fact and conclusions of law
concerning the characterization and value of the portion of marital estate on
which disputed evidence has been presented.[10]  In this case, neither party requested
findings of fact and conclusions of law following rendition of the divorce
decree; therefore, the trial court=s divorce decree implies all findings necessary to support it.[11]  If the trial court=s implied findings are supported by the evidence, it is our duty to uphold the
property division on any theory of law applicable to the case.[12]








Barbara contends that Leland owed, but did not pay, child
support Afor two full years@ while the divorce
proceeding was pending.  The record shows that the trial court first ordered Leland to pay
Barbara $564 a month in child support in January or February 2002 and that
Leland was current in his child support payments at the time of trial.  Five hundred sixty-four dollars times
twenty-four monthsCi.e., the two years= past-due child
support Barbara contends she is dueCequals
$13,536.  Barbara also contends that the
trial court improperly failed to reimburse her for the $11,000 that she
contributed from her TRS account to the down payment on the parties= residence and to
award her part of Leland=s business bank account (valued at
approximately $20,000 upon separation) because that account was community
property. When the amount of the alleged past-due child support, $11,000, and
$10,000 (one-half of the business account) are subtracted from the $79,500 that
the trial court held Barbara mis-spent while the divorce was pending, $44,964
remains.  Divided equally, $44,964 yields
$22,482.  Yet Leland received a judgment
for only $21,989 against Barbara for the mis-spent community savings.  Therefore, the evidence supports the trial
court=s implied findings
concerning the character and value of the marital estate and shows that the
trial court did not abuse its discretion by making the property division.








Further, under the circumstances of this case, we hold that
the trial court did not abuse its discretion by failing to award Barbara the
marital residence as a Anecessary for the children.@  Barbara=s income of
$40,000-plus per year as a school teacher had remained constant throughout the
pendency of the divorce proceeding, whereas Leland=s had fluctuated
due to his health and a pre-divorce decisionCwith Barbara=s inputCnot to renew an
employment contract.  In addition, the
parties= only minor child
was sixteen at the time the divorce decree was rendered, Leland was paying
Barbara $564 per month in child support, and Barbara had at her disposal a
one-third interest in her mother=s $700,000 estate.[13]

Accordingly, for all of these reasons, we hold that the
trial court did not abuse its discretion in dividing the martial estate.  We overrule Barbara=s first issue.

In her second issue, Barbara complains that the trial court
Aerred and abused
its discretion when it failed to find interspousal torts.@ 








Barbara sued Leland for
intentional infliction of emotional distress and libel and slander.  The trial court=s rulings on Barbara=s tort claims are separate from the trial court=s property division; therefore, we review those findings for legal and
factual sufficiency of the evidence, not for an abuse of discretion.[14]

Where, as here, no findings of
fact or conclusions of law were filed, the trial court=s judgment implies
all findings of fact necessary to support it.[15]  If the implied fact findings are supported by
the evidence, it is our duty to uphold the judgment on any theory of law
applicable to the case.[16]








Because Barbara had the burden
of proof at trial on her tort claims, to prevail in her legal sufficiency
challenge on appeal, she must demonstrate that she proved all elements of these
causes of action as a matter of law.[17]  To prevail in her factual sufficiency
challenge, she must show that the trial court=s finding that
Leland did not commit the torts is against the great weight and preponderance
of the evidence.[18]  In reviewing whether a finding is
against the great weight and preponderance of the evidence, we must consider
and weigh all of the evidence and set aside the finding only if the evidence is
so weak or the finding is so contrary to the great weight and preponderance of
the evidence as to be clearly wrong and unjust.[19]

Barbara does not make any arguments or cite any legal
authority to support her challenge to the trial court=s adverse finding
on her libel and slander claim. 
Therefore, we will limit our evidentiary review to Barbara=s claim for
intentional infliction of emotional distress.[20]








The elements of intentional
infliction of emotional distress are:  1)
the defendant acted intentionally or recklessly, 2) the conduct was extreme and
outrageous, 3) the defendant=s actions caused the plaintiff emotional distress, and 4) the
emotional distress was severe.[21]  Liability for outrageous conduct should be
found Aonly where the conduct has been so outrageous in character, and so
extreme in degree, as to go beyond all possible bounds of decency, and to be
regarded as atrocious, and utterly intolerable in a civilized community.@[22] Harassing and retaliatory conduct, without more, is insufficient to
support a cause of action for intentional infliction of emotional distress.[23]

Barbara contends that Leland=s conduct was extreme and outrageous because he admitted to giving her
a Amotivational kick,@ which she testified caused her pain and bruising; Leland made
unfounded allegations of sexual improprieties between Barbara and the parties= son; Barbara had to report Leland=s comments made before her to the school where she was employed,
causing her fear, humiliation, and embarrassment and affecting her employment;
and Leland persisted in calling Barbara AJocasta Queen of Thieves@ and writing this name on child support checks, notes, and letters to
her.








As we have discussed, there
is conflicting testimony regarding the kick. Leland testified that it was Amotivational@ and Ajust a pat.@  Barbara, on the other hand, testified that
Leland attempted to kick her on at least two occasionsConce successfullyCand that the successful kick caused pain and a small bruise. 

There is also conflicting
testimony regarding Leland=s use of the name AJocasta.@  Leland testified that, in Greek mythology,
Jocasta was both the mother and the wife of Oedipus.[24]  Leland further testified that Jocasta was a
pet name for Barbara which he had used both before and after the divorce
petition was filed.  Leland testified
that, although the name seemed Aapplicable@ to Barbara,
he did not mean anything derogatory by it. 
Conversely, Barbara testified that she had never heard the name before
the parties separated and had to research its meaning on the Internet. 








Finally, Leland testified
that a primary reason for the parties= marital troubles was Barbara=s refusal to stop sleeping with their eleven-year-old son on a regular
basis and sometimes in inappropriate attire. 
Leland believed the sleeping arrangement needed to end and that Abad things [could] happen@ as a result of it due to the boy=s increasing age.  Leland
further testified that he had witnessed the child touch Barbara=s breast while the two of them were wrestling. 

Leland acknowledged that he
had written Barbara an email or letter in which he threatened to tell the
school where she worked about this alleged behavior.  But despite making this threat, Leland denied
ever mentioning Barbara=s conduct to
anyone except his attorneys and a court-appointed psychologist, and there is no
evidence controverting this testimony. 
Indeed, Barbara testified that she, not Leland, reported Leland=s allegations to her employer. 
Any communications that Leland made during the divorce proceeding to
attorneys or court-appointed experts are absolutely privileged, and he cannot
be held liable to Barbara for them, even if they were untrue and made
maliciously.[25]








Further, although Barbara
denied ever acting inappropriately with her son, she admitted that she slept
with him frequently.  She claimed,
however, that this was due to his many physical ailments, fears, and
nightmares.  In addition, she gave
inconsistent reasons for reporting Leland=s allegations to her school district. 
She first testified, without elaboration, that she Ahad@ to report
Leland=s allegations to her school, but then stated, AI wanted to report it . . . because of security issues about [Leland=s] behavior.  I was very
frightened for the children that I work with.@  Finally, although Barbara
opined that her sleeping with her son was Aa very socially acceptable parenting skill@ due to his ailments, she admitted that she had not slept with him
since filing for divorce.  Barbara also
acknowledged that she had agreed to an injunction enjoining her from sleeping
with the child until after he reached adulthood. 








Having reviewed the evidence,
we hold that it does not establish as a matter of law that Leland engaged in
extreme and outrageous conduct, nor does it show that the trial court=s implied finding on this element of Barbara=s intentional infliction claim is against the great weight and
preponderance of the evidence.[26]  Many of Leland=s statements were absolutely privileged, and Barbara=s own testimony regarding her sleeping arrangements with her son and
the injunction to which she agreed shows that Leland=s complaints about her conduct were not extreme and outrageous.  

In addition, even if the
trial court believed Barbara=s version of events about the kick and the use of the name AJocasta@ and
disbelieved Leland=s, these
actions amounted to no more than harassing conduct, which by itself is
insufficient to establish Barbara=s intentional infliction of emotional distress claim.[27]  Accordingly, the evidence is legally and
factually sufficient to support the trial court=s finding that Leland did not commit intentional infliction of
emotional distress.  We overrule Barbara=s second issue.

Having overrule both of
Barbara=s issues, we affirm the trial court=s divorce decree.

 

PER CURIAM

PANEL A:   CAYCE,
C.J.; GARDNER and WALKER, JJ.

DELIVERED: 
March 2, 2006











[1]See Tex. R. App. P. 47.4.





[2]There
is no record support for Barbara=s assertion that the business
account contained $35,000 at the time of the parties=
separation.  





[3]Barbara=s
argument that the division of the retirement accounts is unfair because she
cannot collect both teacher retirement and social security benefits was not
raised in the trial court; therefore, even assuming that this argument is
correct, the trial court did not abuse its discretion by failing to take it
into consideration when making the property division.  See Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).





[4]Tex. Fam. Code Ann. '
7.001 (Vernon 1998); Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981); Boyd
v. Boyd, 67 S.W.3d 398, 406 (Tex. App.CFort Worth 2002, no pet.).





[5]Bell
v. Bell, 513 S.W.2d 20, 22 (Tex. 1974); Boyd, 67
S.W.3d at 406.





[6]Downer, 701
S.W.2d at 241-42.





[7]Id.





[8]Davis
v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); see also Goode v. Shoukfeh,
943 S.W.2d 441, 446 (Tex. 1997).





[9]Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).





[10]Tex. Fam. Code Ann. '
6.711(a) (Vernon Supp. 2005).





[11]Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996).





[12]Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); Point
Lookout W., Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex. 1987).





[13]See
Murff, 615 S.W.2d at 699 (holding that trial court may take size of parties=
separate estates into consideration in dividing marital estate).  The sole case on which Barbara relies as
support for her position does not require a different result.  The wife in that case had two minor children
living at home, was earning significantly less than the husband, and was
awarded an amount in
community debts more than twice that of the husband.  See Cunningham v. Cunningham, 515
S.W.2d 345, 346 (Tex. Civ. App.CCorpus Christi 1974, no writ).





[14]See Tex. Fam. Code Ann. '
7.001 (providing for trial court discretion only in division of marital
estate); Twyman v. Twyman, 855 S.W.2d 619, 625 (Tex. 1993) (holding
that, to avoid double recovery, trial court may not base division of marital
property and award of tort damages on same tortious conduct); Roberson v.
Robinson, 768 S.W.2d 280, 281 (Tex. 1989) (stating that standard of review
applicable to trial court=s
findings in bench trial is the same as that applied to jury findings).





[15]Pharo, 922 S.W.2d at 948.





[16]Worford, 801 S.W.2d at 109; Point
Lookout W., Inc., 742 S.W.2d at 278.





[17]Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).





[18]Gooch v. Am. Sling Co., 902 S.W.2d 181, 184 (Tex. App.CFort Worth 1995, no writ).





[19]Dow Chem. Co., 46 S.W.3d at 242; In re King's
Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).





[20]See Tex. R. App. P. 38.1(h) (requiring
clear and concise arguments supporting complaints on appeal, with appropriate
citations to authorities and the record); Fredonia State Bank v. Gen. Am.
Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994) (discussing long‑standing
rule that point may be waived due to inadequate briefing).





[21]Twyman, 855
S.W.2d at 621.





[22]Id.





[23]Amador
v. Tan, 855 S.W.2d 131, 135 (Tex. App.CEl Paso 1993, writ denied).





[24]Although
Barbara contends that Leland referred to her as AJocasta
Queen of Thieves,@ it
is unclear from the record whether Leland said Aqueen
of thieves@ or Aqueen
of Thebes.@  We take judicial notice that the dictionary
defines the term AJocasta@ as Aa
queen of Thebes who marries Oedipus not knowing that he is her son.@  Merriam
Webster=s
Collegiate Dictionary 630 (10th ed. 1994) (emphasis supplied); see
Tex. R. Evid. 201(b), (c).





[25]See
Bird v. W.C.W., 868 S.W.2d 767, 771-72 (Tex. 1994); James v.
Brown, 637 S.W.2d 914, 916 (Tex. 1982); Reagan v. Guardian Life Ins.
Co., 140 Tex. 105, 166 S.W.2d 909, 912 (1942).  Although most cases addressing the judicial
communications privilege involve defamation claims, Texas courts have
consistently applied the privilege to all types of claims arising out of
communications made in the course of judicial proceedings, regardless of the
labels placed on them.  See Bird,
868 S.W.2d at 771-72 (extending absolute privilege beyond defamation cases to
bar suits in which damages sought are basically Adefamation
damages,@ in
order to avoid the Acircumvention
[of the policy behind the privilege] by affording an almost equally
unrestricted action under a different label@); 5‑State
Helicopters, Inc. v. Cox, 146 S.W.3d 254, 259 (Tex. App.CFort
Worth 2004, pet. denied) (applying absolute privilege bar to claim for tortious
interference with contract); Laub v. Pesikoff, 979 S.W.2d 686, 691-92
(Tex. App.CHouston
[1st Dist.] 1998, pet. denied) (holding that defendant could not be held liable
for intentional infliction of emotional distress based on communications made
during course of judicial proceeding).





[26]See
Dow Chem Co., 46 S.W.3d at 241-42.





[27]Amador, 855
S.W.2d at 135.