**Opinion issued September 15, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00617-CV

————————————

**BOB DEUELL, Appellant**

**V.**

**TEXAS RIGHT TO LIFE COMMITTEE, INC., Appellee**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-32179**

---

## O P I N I O N

In this interlocutory appeal, State Senator Bob Deuell challenges the trial court's denial of his motion to dismiss pursuant to the Texas Citizens Participation Act (TCPA). Texas Right to Life Committee, Inc. (TRLC) sued Deuell for tortious interference with contract after Deuell's lawyers sent cease-and-desist letters to two

radio stations that had been airing TRLC's political advertisements concerning Deuell and the stations stopped airing the ads. Deuell argued that the lawsuit should be dismissed under the TCPA because the letters were an exercise of his free speech rights. The trial court denied the motion. We affirm.

## Background

In March 2014, Deuell was a candidate in the Republican primary for re-election as State Senator for Senate District 2, and he faced two challengers. None of the candidates received the necessary votes to win the March primary election. As a result, Deuell and one of the challengers, Bob Hall, faced each other in a run-off election on May 27, 2014.

During the Eighty-Third Session of the Texas Legislature in 2013, Deuell had authored Senate Bill 303, which related to advance directives. TRLC, an advocacy political action committee, opposed SB 303. On May 6, 2014, during the run-off election season, TRLC entered into a contract to secure the production of a radio advertisement criticizing Deuell for his authorship of SB 303 and urging voters to vote for Hall. TRLC secured airtime with two radio stations run by Cumulus Media Dallas-Fort Worth and Salem Communications, which began airing the advertisement. In relevant part, the advertisement said:

> Before you trust Bob Deuell to protect life, please listen carefully. If your loved one is in the hospital, you may be shocked to learn that a faceless hospital panel can deny life-sustaining care . . . . Bob Deuell sponsored a bill to give even more power to these hospital panels over

2

life and death for our ailing family members.  Bob Deuell turned his back on life and on disabled patients.

On May 14, 2014, Deuell's lawyers sent cease-and-desist letters to Cumulus and Salem, urging that they cease airing the advertisement.  In relevant part, the letters, which were essentially identical, stated:

> We represent the Honorable Texas State Senator Bob Deuell, and we have become aware of defamatory advertisements published in certain media outlets which were airing and re-airing a non-use campaign ad by Texas Right to Life PAC (not a candidate ad).
>
> These false and defamatory statements completely and totally misrepresent Senator (and Medical Doctor) Deuell's position on Patient Protection and End of Life Legislation and completely and totally misrepresent Senate Bill 303.  Specific FALSE content of this ad includes the following:
>
> Defamation: - "Bob Deuell sponsored a bill to give even more power to these hospital panels over life and death for our ailing family members.  Bob Deuell turned his back on life and on disabled patients."
>
> . . . .
>
> If your station has been running this ad, you are hereby put on notice of the false and defamatory statements contained therein.  Any further publication of this ad will shift your conduct from reckless disregard to intentional and actual malice. . . . .
>
> **THEREFORE, WE RESPECTFULLY DEMAND THAT YOU IMMEDIATELY CEASE AND DESIST FROM INTENTIONALLY DEFAMING TEXAS STATE SENATOR BOB DEUELL BY REPUBLISHING THESE FASLE [SIC] AND DEFAMATORY STATEMENTS BY RE-AIRING THE ADVERTISEMENT, AS OUTLINED.**
>
> **LITIGATION HOLD & PRESERVATION DEMAND**

> You are hereby on notice and should have reason to believe that litigation may result from the claims described above. . . . .

(Emphasis in original.) That same day, Cumulus and Salem notified TRLC "that agents of Mr. Deuell had contacted them and that they were suspending the airing of [TRLC's] commercials based upon the legal threats made by Mr. Deuell." TRLC paid to produce a new advertisement that Cumulus and Salem agreed to air, and also contracted with CBS Radio Texas for additional airtime to compensate for the lost advertising time.

TRLC sued Deuell for tortious interference with contract and sought damages for the expenses it incurred to produce the new advertisement and to buy additional airtime with CBS Radio Texas. Deuell moved to dismiss the suit pursuant to the TCPA, arguing that the cease-and-desist letters were an exercise of his right to free speech, and that the suit was precluded by the affirmative defenses of judicial privilege and illegal contract. TRLC responded that the TCPA did not apply, and that even if it did, it satisfied its evidentiary burden to establish a prima facie case of tortious interference with contract. After a hearing, the trial court denied the motion.

## Discussion

In his first issue, Deuell contends that the trial court erred in denying his motion to dismiss because he showed that TRLC's tortious interference suit was related to his exercise of his right of free speech, and TRLC failed to establish by

4

clear and specific evidence a prima facie case for each essential element of its tortious interference claim.

## A. Standard of Review and Applicable Law

To obtain dismissal under the TCPA, a defendant must show "by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of the right of free speech; the right to petition; or the right of association." TEX. CIV. PRAC. & REM. CODE § 27.005(b). In deciding whether to grant a motion under the TCPA and dismiss the lawsuit, the statute instructs a trial court to "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006.

If the movant meets its burden to show that a claim is covered by the TCPA, to avoid dismissal of that claim, a plaintiff must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). In *In re Lipsky*, 460 S.W.3d 579 (Tex. 2015), the Texas Supreme Court clarified how this evidentiary standard should be applied. It wrote: "[M]ere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice." *Id.* at 590–91. "Instead, a plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 591. The Supreme Court noted that "[i]n contrast to 'clear and specific evidence,' a 'prima facie case' has a traditional legal meaning." *Id.* at 590. "It refers to evidence sufficient as a matter

of law to establish a given fact if it is not rebutted or contradicted." *Id.* (citing *Simonds v. Stanolind Oil & Gas Co.*, 136 S.W.2d 207, 209 (Tex. 1940)). "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (citing *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)); *see Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (term "prima facie case" in the TCPA "implies a minimal factual burden," the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true"). Thus, for example, "[i]n a defamation case that implicates the TCPA, pleadings and evidence that establish[] the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Lipsky*, 460 S.W.3d at 591.

If the nonmovant establishes a prima facie case, the burden shifts back to the movant. In order to obtain dismissal, the movant must establish by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim. TEX. CIV. PRAC. & REM. CODE § 27.005(d).

We review de novo a trial court's ruling on a motion to dismiss under the TCPA. *Better Bus. Bur. of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In conducting

6

this review, we review the pleadings and evidence in a light favorable to the nonmovant. *Crazy Hotel*, 416 S.W.3d at 80–81.

**B.     Did TRLC establish a prima facie case?**

In his first issue, Deuell argues that the trial court erred in denying his motion to dismiss because TRLC's suit is related to Deuell's exercise of his free speech rights and TRLC failed to adduce clear and specific evidence to support each element of its claim. TRLC argues that Deuell did not show that the suit is related to Deuell's exercise of his free speech rights, and, even if he did, TRLC satisfied its evidentiary burden to establish a prima facie case. For purposes of this interlocutory appeal, we will assume without deciding that the suit relates to Deuell's exercise of his right of free speech, because we agree with TRLC that it established a prima facie case of its claim for tortious interference.

The essential elements of a tortious interference with contract claim are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) that the act was a proximate cause of the plaintiff's damage, and (4) that actual damage or loss occurred. *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995). Accordingly, we evaluate the pleadings and evidence adduced in connection with the motion to dismiss to determine whether TRLC established a prima facie case for each element of its tortious interference claim by clear and specific evidence.

### 1. Existence of contract subject to interference

TRLC adduced clear and specific evidence establishing a prima facie case of the first element of its tortious interference claim: the existence of the two contracts with which it alleges Deuell interfered. In an affidavit accompanying its response to Deuell's motion to dismiss, James J. Graham, the Executive Director of TRLC, averred that "[o]n or about May 7, 2014, [TRLC] entered into a contract with Cumulus Media Dallas-Fort Worth to secure airtime for [its] radio advertisements." Graham averred that TRLC paid approximately $17,935 pursuant to that contract. Graham further averred that "[o]n or about May 8, 2014, [TRLC] entered into a contract with Salem Communications to secure airtime for [its] radio advertisements." Graham averred that TRLC paid approximately $22,015 pursuant to that contract. Graham further averred that Cumulus and Salem performed under the contracts—they ran the advertisements that were the subject of the contracts—until they each received cease-and-desist letters from Deuell on May 14.

Deuell contends that TRLC failed to satisfy its burden because it did not attach the contracts themselves and because Graham's affidavit is conclusory and includes insufficient detail regarding the contracts' terms. But Graham did not merely make a conclusory statement that the two contracts existed. *Cf. Lipsky*, 460 S.W.3d at 592–93 (TCPA affidavit is conclusory when it fails to provide underlying facts). Instead, Graham's affidavit stated the two dates on which each of the contracts was

8

made, identified the parties to each of the contracts, identified the consideration TRLC paid Cumulus and Salem in exchange for their agreement to air the TRLC advertisement, and averred that Cumulus and Salem performed by actually airing the advertisement until May 14, the date Deuell sent the cease-and-desist letters. This is evidence sufficient to support a rational inference that the contracts existed, and this evidence was not rebutted or contradicted. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Lipsky*, 460 S.W.3d at 590 (prima facie case requires only minimum quantum of evidence necessary to support rational inference that allegation of fact is true); *Crazy Hotel*, 416 S.W.3d at 80 (same); *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (valid contract includes offer, acceptance, meeting of the minds, each party's consent to terms, and execution and delivery, which can be shown by evidence that parties treated contract as effective); *see also Martin v. Bravenec*, No. 04-14-00483-CV, 2015 WL 2255139, at *7 (Tex. App.—San Antonio, May 13, 2015, pet. denied) (affirming denial of TCPA motion to dismiss tortious interference claim and holding that Bravenec met burden to establish existence of contract subject to interference where pleadings alleged the existence of "a contract to sell" real property and Bravenec "identified the name of the prospective purchaser at the hearing").

Our dissenting colleague asserts that Graham's affidavit "does not establish the existence of a contract" because Graham did not present sufficient detail regarding the contracts' terms. But the cases on which the dissent relies do not support reversal. In *Better Business Bureau of Metropolitan Houston*, our court concluded that John Moore had not met its burden to adduce clear and specific evidence of the existence of a contract where John Moore merely alleged that the Bureau had interfered with John Moore's customer contracts but "did not present evidence regarding the terms" of any of the contracts it alleged existed between John Moore and any of the individuals registering complaints on the Bureau's website. 441 S.W.3d at 361. Similarly, in *Serafine v. Blunt*, 466 S.W.3d 352 (Tex. App.—Austin 2015, no pet.), the Austin court noted that the Blunts' evidence "indicate[d] a possible contract" but concluded that the evidence was too vague and conclusory to support a prima facie case of their tortious interference claim because the Blunts neither attached a document memorializing their contract nor offered detail about the contract's terms. *Id.* at 361. This case is different because TRLC identified the counterparties to the contracts—Cumulus and Salem—and adduced specific evidence of the existence and material terms of the agreements: it agreed on May 7 and 8 to pay them $17,935 and $22,015, respectively, in exchange for airtime for TRLC's advertisement in advance of the May 27 run-off, and Cumulus and Salem performed by running the advertisement until May 14, when they received Deuell's

10

cease-and-desist letter. *See Prime Prods., Inc.*, 97 S.W.3d at 636 (existence of contract may be shown by evidence that parties treated contract as effective).

Deuell also contends that, by failing to attach the contracts to its response, TRLC fell short of its burden to demonstrate that the contracts are subject to interference. *See Holloway*, 898 S.W.2d at 795–96 (noting first element of tortious interference claim is existence of a contract subject to interference). Along the same lines, our dissenting colleague asserts that Cumulus and Salem were obliged to reserve for themselves the right to reject TRLC's advertisements. He reasons that if Cumulus and Salem had a right to suspend the advertisement, Deuell could not be liable for interference because "inducing a contract obligor to do what it has a right to do is not an actionable interference." *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 431 (Tex. 1997).

We note, however, that TRLC did not bear the burden to disprove the existence of Deuell's potential defenses. Rather, it was Deuell who bore the burden to prove a defense to TRLC's tortious interference claim. TEX. CIV. PRAC. & REM. CODE § 27.005(d) (moving party bears burden to establish by preponderance of evidence each essential element of a defense to nonmovant's claim). And, although the TCPA permits discovery relevant to a section 27.003 motion, *see* TEX. CIV. PRAC. & REM. CODE § 27.006(b), Deuell did not adduce evidence that any cancellation or other terms of the contracts provided that Cumulus and Salem's

11

suspension of the advertisement would not amount to a breach. The contracts may contain such a provision, but no evidence of such a provision is before us and, accordingly, the potential existence of such a provision should not be the basis for today's decision.[1]

In sum, we conclude that TRLC met its burden to establish, by clear and specific evidence, the existence of contracts subject to interference between TRLC and Cumulus and Salem for the purchase of airtime for TRLC's radio advertisement concerning Deuell. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also Lipsky*, 460 S.W.3d at 590 (prima facie case requires only minimum quantum of evidence necessary to support rational inference that allegation of fact is true); *Crazy Hotel*, 416 S.W.3d at 80 (same); *Bravenec*, 2015 WL 2255139, at *7 (burden satisfied where pleadings alleged the existence of "a contract to sell" real property and Bravenec "identified the name of the prospective purchaser at the hearing").

### 2.      Willful and intentional act of interference

TRLC also adduced clear and specific evidence establishing a prima facie case of the second element of its tortious interference claim: a willful and intentional act

---

[1]      We express no opinion about the merits of a defense based on a cancellation or other contract provision. We likewise express no opinion about the merits of the defense of justification. *See Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 80 (Tex. 2000) (justification is an affirmative defense to tortious interference with contract; justification defense can be based on exercise of either one's own legal rights or a good-faith claim to a colorable legal right). Rather, we address only the two defenses Deuell raised—judicial privilege and illegality—below.

12

of interference. Graham averred that Cumulus and Salem both notified TRLC "that agents of Mr. Deuell had contacted them and that they were suspending the airing of our commercials based upon the legal threats made by Mr. Deuell." Deuell attached copies of the letters sent to Cumulus and Salem, which showed that Deuell threatened to sue Cumulus and Salem unless they stopped airing the ads.

Deuell contends that this evidence does not satisfy TRLC's burden because it is not sufficiently clear and specific. In particular, Deuell complains that Graham's affidavit does not specify which individuals at Cumulus and Salem notified TRLC, how they notified TRLC that the advertisements would be suspended, who at TRLC received the notice, or what the exact content of the notice was. But the failure of TRLC to adduce more detailed evidence does not negate the evidence—adduced by Deuell—showing that Deuell's lawyers contacted Cumulus and Salem and urged them to stop airing the advertisements. The May 14th letters demanded that Cumulus and Salem stop airing the advertisements, and Graham averred that Cumulus and Salem did in fact stop running the advertisements on May 14th. This is clear and specific evidence of a willful and intentional act of interference. *Lipsky*, 460 S.W.3d at 590 (prima facie case requires only minimum quantum of evidence necessary to support rational inference that allegation of fact is true); *see also Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993) (evidence showing defendant knowingly induced or intended contract obligor to stop

13

performing under contract establishes actionable willful and intentional act of interference).

Deuell also complains that Graham's averments regarding interference constitute hearsay. But Deuell failed to preserve this complaint because he did not obtain a ruling on this objection from the trial court. *See Wilson v. Gen. Motors Acceptance Corp.*, 897 S.W.2d 818, 821–22 (Tex. App.—Houston [1st Dist.] 1994, no writ) (hearsay in affidavit is defect in form); *Vice v. Kasprzak*, 318 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (objection to defect in form is waived if no ruling secured). Additionally, the TCPA expressly contemplates consideration of affidavits. *See* TEX. CIV. PRAC. & REM. CODE § 27.006 ("In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.").

Thus, considering all the evidence in a light favorable to TRLC as the nonmovant, TRLC met its burden to establish a prima facie case of a willful and intentional act of interference by clear and specific evidence. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also Lipsky*, 460 S.W.3d at 590 (prima facie case requires only minimum quantum of evidence necessary to support rational inference that allegation of fact is true); *Crazy Hotel*, 416 S.W.3d at 80 (same).

**3.      Interfering act proximately caused plaintiff's actual damage or loss**

Finally, TRLC adduced clear and specific evidence establishing a prima facie case of the third and fourth elements of its tortious interference claim—that the interfering act proximately caused TRLC actual damage or loss.  Graham averred that after TRLC learned that Cumulus and Salem were no longer running its advertisements based upon the letters from Deuell's lawyers, TRLC "contacted our legal counsel who immediately contacted Cumulus . . . and Salem . . . in an attempt to resume our radio advertisements airing."  Graham goes on to aver that Cumulus and Salem "were informed by counsel for [TRLC] that we considered the efforts of Mr. Deuell to be tortious interference with our existing contract and a violation of our right to engage in political speech."  However, when Cumulus and Salem did not resume airing the advertisements, TRLC "agreed to produce a new radio advertisement and replace the original radio advertisement suspended due to the threats of Mr. Deuell."  Graham further averred:

> Recognizing that Mr. Deuell's interference had disrupted the timing and effectiveness of the radio advertisements originally contemplated by [TRLC], the organization recognized that it needed to take remedial measures to make up for the lost advertising time so it contracted with CBS Radio Texas for additional airtime in the Dallas/Ft Worth media market for the new radio advertisement.  [TRLC] paid approximately $15,037 for the placement and airing of the new radio advertisements with CBS Radio Texas.

Thus, TRLC met its burden to adduce a prima facie case by clear and specific evidence that Deuell's act caused it actual damage or loss, in the form of costs to

produce a new radio advertisement and to procure additional airtime to make up for time the original advertisement had been suspended.

Deuell and our dissenting colleague assert that TRLC was required to adduce more specific evidence about its damages, such as the number of instances in which the original advertisements were scheduled to but did not air, the content of the replacement advertisements, the number of times CBS Radio Texas aired the advertisements, and whether the advertisements were targeted at the same audience or time spots as the Cumulus and Salem advertisements. But the TCPA does not impose such a requirement. While this evidence could be necessary or at least useful at an eventual trial on the merits, a TCPA nonmovant is not required to adduce all of the evidence that they would, or could, need at trial. *Lipsky*, 460 S.W.3d at 590–91 (pleadings and evidence showing factual basis for claim is sufficient to meet TCPA burden). Under the TCPA, TRLC only had to adduce evidence supporting a rational inference as to the existence of damages, not their amount or constitutent parts. *Id.* at 590 (TCPA nonmovant only required to adduce evidence to support rational inference that allegation of fact is true). When we consider the evidence described above in a light favorable to the nonmovant TRLC, as we are required to do, that evidence, which was not rebutted or contradicted, is sufficient to support a rational inference that the advertisements were discontinued as a result of Deuell's communications and that TRLC incurred specific costs to replace the contracted-for

advertising services. *See id.* (evidence may be direct or circumstantial and need only show factual basis for claim); *Crazy Hotel*, 416 S.W.3d at 80–81 (prima facie case requires only minimum quantum of evidence necessary to support rational inference that allegation of fact is true). We therefore conclude that TRLC met its burden to adduce clear and specific evidence that the allegedly interfering act caused it actual damage or loss.

In summary, we hold that TRLC proved, by clear and specific evidence, a prima facie case supporting its tortious interference with contract claim.

We overrule Deuell's first issue.

## C. Did Deuell establish the affirmative defense of judicial privilege?

In his second issue, Deuell contends that even if TRLC met its burden to prove a prima face case, the trial court erred by failing to grant his motion to dismiss because he established the affirmative defense of judicial privilege by a preponderance of the evidence. Specifically, Deuell argued that Deuell's lawyers' letters to Cumulus and Salem were subject to the absolute judicial privilege, because they were made in contemplation of a judicial proceeding.

### 1. Applicable law

The judicial privilege applies to bar claims that are based on communications related to a judicial proceeding that seek defamation-type damages in name or in substance, i.e., damages for reputational harm. Communications made in the course

of a judicial proceeding are absolutely privileged and will not serve as the basis of a civil action for libel, slander, or business disparagement, regardless of the negligence or malice with which they are made. *See James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982); *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942). This privilege extends to any statements made by the judges, jurors, counsel, parties, or witnesses and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits, and any pleadings or other papers in the case. *James*, 637 S.W.2d at 916–917.

Judicial privilege also extends to statements made in contemplation of and preliminary to judicial proceedings. *See Watson v. Kaminski*, 51 S.W.3d 825, 827 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *see also Thomas v. Bracey*, 940 S.W.2d 340, 342–43 (Tex. App.—San Antonio 1997, no writ); *Russell v. Clark*, 620 S.W.2d 865, 869 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.). To trigger the privilege, "there must be a relationship between the correspondence and the proposed or existing judicial proceeding, which decision is made by considering the entire communication in context, resolving all doubts in favor of its relevancy." *Crain v. Smith*, 22 S.W.3d 58, 62 (Tex. App.—Corpus Christi 2000, no pet.); *see also Krishnan v. Law Offices of Preston Henrichson, P.C.*, 83 S.W.3d 295, 302–03 (Tex. App.—Corpus Christi 2002, pet. denied) (no requirement that actual lawsuit

be filed in order for judicial privilege to apply; only that statements are related to a contemplated judicial proceeding).

However, the judicial privilege does not apply to every type of claim. Originally, the judicial privilege provided protection only from defamation claims, including slander and libel. *See Bird v. W.C.W.*, 868 S.W.2d 767, 771 (Tex. 1994).[2] In *Bird v. W.C.W.*, 868 S.W.2d 767 (Tex. 1994), the Texas Supreme Court held that the privilege should apply in cases in which a party seeks damages that flow from alleged reputational harm, regardless of the type of claim alleged. *Id.* at 772. The *Bird* Court extended the privilege to a claim for negligent misdiagnosis, noting that the damages being sought were "basically defamation damages." *Id.*

In *Bird*, a father brought a negligent misdiagnosis claim against a psychologist who had erroneously concluded, and averred in a family court proceeding, that the father had sexually abused his son. *Id.* The father sought damages for emotional harm and financial damage. *Id.* The Texas Supreme Court concluded that "the essence of the father's claim is that it was [the psychologist's] *communication* of her diagnosis that caused him emotional harm and related financial damages." *Id.* at 768–69 (emphasis in original). Because the psychologist's communications were

---

[2]    Judicial privilege was also extended to actions based upon the filing of a lis pendens. *See Griffin v. Rowden*, 702 S.W.2d 692, 695 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (judicial privilege applied to tortious interference suit based upon filing of lis pendens). There is no lis pendens at issue in this case.

19

made during the course of a judicial proceeding and the father's damages flowed from reputational harm caused by those communications, the Supreme Court held that the judicial privilege applied, and rendered judgment in favor of the psychologist. *Id.* at 772.

Following *Bird*, courts have applied the privilege to claims other than libel, slander, and defamation, including tortious interference. But they have done so only "when the essence of a claim is damages that flow from communications made in the course of a judicial proceeding" and the plaintiff seeks reputational damages. *See Laub v. Pesikoff*, 979 S.W.2d 686, 691 (Tex. App.—Houston [1st Dist.] 1998, writ denied) (applying privilege to husband's claims against wife's psychotherapists who offered affidavits in divorce proceeding regarding wife's mental state; finding that claims for tortious interference with contract, civil conspiracy, and intentional infliction of emotional distress in addition to libel and slander were barred by judicial privilege because "the essence of each of these claims is that [husband] suffered injury as a result of the *communication* of allegedly false statements during a judicial proceeding" and husband claimed damages were essentially defamation damages) (emphasis in original); *see Crain v. Unauthorized Practice of Law Comm. of Supreme Court of Tex.*, 11 S.W.3d 328, 335 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (applying *Laub*; judicial privilege applied to plaintiff's tortious interference with contract claim against chair of UPLC subcommittee because claim

20

sought defamation damages under different label). Whether a claim is subject to judicial privilege is a question of law. *See Thomas v. Bracey*, 940 S.W.2d 340, 343 (Tex. App.—San Antonio 1997, no pet.).

**2.    Analysis**

We conclude that TRLC's tortious interference claim is not protected by the absolute judicial privilege, because TRLC does not seek to recover reputational or defamation-type damages.[3] To the contrary, TRLC seeks direct and consequential contract damages that allegedly flowed from Deuell's sending cease-and-desist letters to Cumulus and Salem.

Deuell asserts that the judicial privilege forecloses TRLC's suit, arguing that judicial privilege categorically applies to tortious interference claims that are based upon letters sent by a lawyer threatening litigation. But no Texas court has extended the judicial privilege this far, and *Bird* made clear that the purpose of the privilege is to foreclose claims for reputational damages, regardless of the label the claim is given. *See Bird*, 868 S.W.2d at 772.

---

[3]    Deuell argues that TRLC's failure to address judicial privilege and illegal contract in response to his motion to dismiss means that he established these defenses by a preponderance of the evidence and that TRLC has waived any argument regarding these defenses on appeal. But it was Deuell, the movant, who bore the burden to establish each essential element of a valid affirmative defense by a preponderance of the evidence. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d). This holds true regardless of TRLC's response. *See id.*

The cases on which Deuell relies do not support his argument. For example, in *Laub v. Pesikoff*, 979 S.W.2d 686 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), Laub sued his wife's treating psychotherapists for libel, slander, intentional infliction of emotional distress, conspiracy, and tortious interference after they averred in summary-judgment affidavits that Laub physically abused his wife. *Id.* at 688–89. The trial court granted summary judgment on the ground that Laub's suit was barred by the judicial privilege. *Id.* at 689. On appeal, this Court affirmed, reasoning that the judicial privilege applied because the essence of Laub's claims was that he suffered injury as a result of the communication of allegedly false statements during a judicial proceeding and Laub sought damages for reputational injury. *Id.* at 691–92.

Similarly, in *Crain*, Crain, a non-lawyer, operated a debt collection business in which he filed lien affidavits. 11 S.W.3d at 331. The Unauthorized Practice of Law Committee (UPLC) investigated, and Lehmann, the chairman of the Houston subcommittee of the UPLC, testified against Crain. *Id*. at 335. Crain sued Lehmann, asserting that Lehmann's testimony constituted tortious interference with Crain's business. *Id*. at 331–32. Implicit in Crain's claims was that Lehmann's testimony harmed Crain's reputation. *See id.* In light of the fact that Crain sought to recover for reputational injury, this court affirmed the summary judgment in the UPLC's favor based on the judicial privilege.

Finally, in *Crain v. Smith*, 22 S.W.3d 58 (Tex. App.—Corpus Christi 2000, no pet.), Smith, a lawyer, sent Crain a letter on behalf of Smith's client, advising Crain of her discovery that Crain had been charged with unauthorized practice of law and demanding payment for her client's damages resulting from the filing of a lien. *Id.* at 59. Crain sued Smith for libel, slander, and tortious interference with contract to recover for the alleged harm to his reputation. *Id.* Smith obtained a summary judgment on the basis that her letter was subject to judicial privilege, and the Corpus Christi Court of Appeals affirmed. *Id.* at 63.

These authorities demonstrate, consistent with *Bird*, that the judicial privilege may apply to various claims, regardless of the label they are given, but only if the damages sought are essentially defamation or reputational damages. *See Crain*, 11 S.W.3d at 335 & n.1; *Laub*, 979 S.W.2d at 691–92.[4] Here, the live pleadings and evidence reflect that TRLC does not seek defamation or reputational damages, and we thus conclude that the judicial privilege does not apply to TRLC's tortious

---

[4] Deuell also relies upon *Griffin v. Rowden*, 702 S.W.2d 692 (Tex. App.—Dallas 1985, writ ref'd n.r.e.), in which the court of appeals held that judicial privilege applied to a tortious interference claim that was based upon the filing of a lis pendens. *Id.* at 695. *Griffin* is inapposite here because there is no lis pendens at issue. *See id.* at 694; *see also Prappas v. Meyerland Cmty. Improvement Ass'n*, 795 S.W.2d 794, 796 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (recognizing that *Griffin* turned specifically on consideration of lis pendens).

23

interference claim. Accordingly, we hold that the trial court did not err in concluding that Deuell should not prevail based upon that defense.

We overrule Deuell's second issue.

**D.    Did Deuell establish the affirmative defense of illegality?**

In his third issue, Deuell contends that even if TRLC met its burden to prove a prima face case of tortious interference, the trial court erred by failing to grant his motion to dismiss because he established the affirmative defense of illegality by a preponderance of the evidence. Deuell argues that TRLC's advertisements violated section 255.001 of the Texas Election Code, and therefore, the contracts to air the advertisements were illegal. Accordingly, Deuell argues that TRLC cannot maintain its suit because a defendant cannot be held liable for tortiously interfering with an illegal contract. *See GNG Gas Sys., Inc. v. Dean*, 921 S.W.2d 421, 427 (Tex. App.—Amarillo 1996, writ denied) (if performance of contract will result in violation of Constitution, statute, or ordinance, contract is illegal); *Flynn Bros. v. First Med. Assocs.*, 715 S.W.2d 782, 785 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (when party sues based upon illegal contract, courts do not entertain suit); *see also Lewis v. Davis*, 199 S.W.2d 146, 148–49 (Tex. 1947) (contract to do thing which cannot be performed without violation of law is void).

Section 255.001 of the Election Code was enacted in 1987 and required certain disclosures be made regarding, among other things, the identity of the person

24

paying for political advertisements. In 2003, the Court of Criminal Appeals held that section 255.001 violated the First Amendment of the United States Constitution. *See Doe v. State*, 112 S.W.3d 532, 534 (Tex. Crim. App. 2003). Deuell acknowledged at oral argument that section 255.001 is not a basis for reversal. We therefore conclude that Deuell did not establish the affirmative defense of illegality. *See id.* Accordingly, we hold that the trial court did not err in concluding that Deuell should not prevail based upon the affirmative defense of illegal contract.[5]

We overrule Deuell's third issue.

## Conclusion

We affirm the trial court's order. We dismiss as moot Deuell's motion for leave to file a supplement to his appellant's brief.

Rebeca Huddle
Justice

Panel consists of Justices Jennings, Bland, and Huddle.

Jennings, J., dissenting.

---

[5] TRLC argues that Deuell waived his affirmative defenses by failing to include them in his answer. Because we have determined that Deuell did not carry his burden on either of the defenses he raised on appeal, we do not reach the question of whether Deuell was required to plead the affirmative defenses in order to prevail on his TCPA motion to dismiss.