

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00533-CV

Oscar Leo **QUINTANILLA**,
Appellant

v.

Andrew Bradford **WEST**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-06259
Honorable David A. Canales, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: January 15, 2020

AFFIRMED AND REMANDED

This case concerns a debt secured by mineral interests. Andrew Bradford West claims that after he fully satisfied his debt to Oscar Leo Quintanilla, Quintanilla filed documents in the real property records asserting fraudulent liens on the mineral interests. West sued Quintanilla for slander of title and fraudulent liens, and Quintanilla moved to dismiss West's claims under the Texas Citizens Participation Act ("TCPA").[1] The trial court denied Quintanilla's motion. On

---

[1] The TCPA was amended after the underlying suit was filed. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687 (codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001, .003, .005–.007, .0075, .009–.010). We apply the version of the statute before the 2019 amendment. *See id.*

appeal, we reversed the trial court's order and concluded that, although the TCPA applied to West's claims, West failed to establish a prima facie case for the falsity of Quintanilla's liens. The Texas Supreme Court disagreed, reversed our judgment, and remanded the cause for us to consider whether West has established a prima facie case for the other elements of his claims and whether Quintanilla has established his defenses by a preponderance of the evidence. On remand, Quintanilla only challenges the causation and special damages elements of West's slander-of-title claim.[2] We hold that West has established a prima facie case for these required elements, and, accordingly, we affirm the trial court's order.

## BACKGROUND[3]

West and Quintanilla are former business partners. In early 2014, Quintanilla and West entered into a trading agreement (the "2014 Trading Agreement"). Under this agreement, Quintanilla provided $5 million in capital into an account that West used for trading. Quintanilla and West agreed to share equally in any profits or losses stemming from the trading account. To cover his share of the losses, West executed a promissory note for an amount up to $5 million and a security agreement pledging all of West's personal assets, including certain mineral interests, as collateral for the promissory note. Pursuant to the promissory note and security agreement, Quintanilla could perfect his security interest in the assets pledged by West. By late 2014, the total losses from the trading account exceeded $14 million, and, under the 2014 Trading Agreement, West was liable for half that amount (approximately $7 million).

---

[2] In a letter to this court following remand, Quintanilla withdrew his challenge to the trial court's finding that he failed to establish his defenses by a preponderance of the evidence. He also withdrew his challenge with respect to West's fraudulent-lien claim. Quintanilla advised us that the only issue remaining is whether West failed to make a prima facie case on the required elements of causation and special damages for his slander-of-title claim.

[3] The following is a brief summation of the underlying facts and the procedural history of the case. For a more thorough recitation of the underlying facts, see *Quintanilla v. West*, 534 S.W.3d 34, 38–42 (Tex. App.—San Antonio 2017), *rev'd*, 573 S.W.3d 237 (Tex. 2019) and *West v. Quintanilla*, 573 S.W.3d 237, 239–242 (Tex. 2019).

In January 2016, the business relationship between Quintanilla and West terminated, and Quintanilla demanded that West pay the total $7 million debt owed to him under the 2014 Trading Agreement. Quintanilla filed a financing statement and memorandum in the real property records of McMullen County, thereby perfecting his security interest in the assets West pledged under the 2014 Trading Agreement. West contends that he satisfied his debt to Quintanilla through two additional agreements, which we discussed in detail in our previous opinion. *See Quintanilla*, 534 S.W.3d 34 at 38–42; *see also West*, 573 S.W.3d at 239–42. West also claims that he was in the process of selling certain mineral interests, but the sale was terminated by the buyer because of West's inability to convey clear title to the mineral interests after Quintanilla filed in the property records.

West filed suit against Quintanilla for slander of title and fraudulent liens. West claimed Quintanilla knowingly and intentionally slandered West's title to the mineral interests by filing fraudulent and false lien documents when Quintanilla knew that West had already fully satisfied his debt to him. Quintanilla filed a motion to dismiss West's slander-of-title and fraudulent-lien claims under the TCPA. After a hearing, the trial court denied Quintanilla's motion, finding: (1) the TCPA applied to West's slander-of-title and fraudulent-lien claims; (2) West established a prima facie case on those claims by clear and specific evidence; and (3) Quintanilla failed to establish his defenses by a preponderance of the evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005 (establishing basis for dismissal of a legal action under the TCPA).

On appeal, Quintanilla argued West could not establish a prima facie case on his slander-of-title and fraudulent-lien claims. We agreed, holding that the parol evidence rule prevented West from establishing a prima facie case for the falsity of Quintanilla's liens. *Quintanilla*, 534 S.W.3d at 50. We did not reach the other elements of West's claims. *See id.* The Texas Supreme Court reversed our judgment and held that West had satisfied his burden in establishing a prima facie

case for the falsity of Quintanilla's liens. *West*, 573 S.W.3d at 249. The supreme court remanded the case for us to address the issues we did not reach in our prior opinion. The only issue that remains is whether West established a prima facie case for the causation and special damages elements of his slander-of-title claim.

## TEXAS CITIZENS PARTICIPATION ACT

The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015) (orig. proceeding). The TCPA was implemented to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002.

In furtherance of its purpose, the TCPA provides a special procedure for the expedited dismissal of a legal action that implicates a party's First Amendment rights. *In re Lipsky*, 460 S.W.3d at 586. If the legal action is based on or in response to the exercise of a party's First Amendment rights, that party may move to dismiss the legal action. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003. A three-step burden shifting mechanism is triggered by the filing of a motion to dismiss under the TCPA. *Quintanilla*, 534 S.W.3d at 42 (citing *In re Lipsky*, 460 S.W.3d at 586–87). The movant bears the initial burden to show by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). If the movant meets its initial burden, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of his claim. *Id.* § 27.005(c). If the nonmovant fails to meet its burden, the trial court must dismiss the legal action.

*See id.* If the nonmovant satisfies its burden, the trial court must nevertheless dismiss the legal action if the movant establishes each essential element of a valid defense to the nonmovant's claim by a preponderance of the evidence. *Id.* § 27.005(d).

In determining whether the nonmovant's claim should be dismissed, the court may consider the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based. *Id.* § 27.006(a). On appeal, the trial court's ruling on a motion to dismiss under the TCPA is reviewed *de novo*, and the pleadings and evidence are viewed in the light most favorable to the nonmovant. *Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 WL 4739438, at *3 (Tex. App.—San Antonio Sept. 30, 2019, no pet.) (mem. op.).

Our prior conclusion that Quintanilla met his initial burden in proving that the TCPA applies to West's slander-of-title claim remains undisturbed. *See Quintanilla*, 534 S.W.3d at 47; *see also West*, 573 S.W.3d at 242 n.6. Therefore, our review begins with the second step in the burden-shifting analysis.

## I. PRIMA FACIE ANALYSIS

To avoid dismissal under the TCPA, the burden was on West to establish by clear and specific evidence a prima facie case for each essential element of his claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). The TCPA does not define "clear and specific" evidence, but the Texas Supreme Court has construed the terms "clear and specific" to mean, respectively, "unambiguous, sure, or free from doubt," and "explicit or relating to a particular named thing." *In re Lipsky*, 460 S.W.3d at 590 (internal quotations omitted). Prima facie evidence is evidence that is sufficient as a matter of law to establish a particular fact if it is not rebutted or contradicted. *Id*. In other words, it is merely the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)). Thus, clear and specific evidence refers to the quality

of evidence needed to establish a prima facie case, while a prima facie case refers to the quantity of evidence needed to meet the nonmovant's minimal factual burden. *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.). The TCPA requires more than mere notice pleading, that is, more than general allegations that restate the elements of the nonmovant's cause of action. *In re Lipsky*, 460 S.W.3d at 590–91. Conclusory statements and bare, baseless opinions do not establish a prima facie case by clear and specific evidence. *See id.* at 592–93. Although the TCPA requires more information about the underlying claim, it does not impose a heightened burden of proof or an elevated evidentiary standard, nor does it prohibit consideration of circumstantial evidence. *Id.* at 591. Rather, the plaintiff is charged with providing enough detail to show the factual basis for its claim and to base opinions on demonstrable facts. *Id.* at 591, 593.

### a. SLANDER OF TITLE

A slander-of-title claim requires publication of a "false and malicious statement made in disparagement of a person's title to property which caused special damages." *West*, 573 S.W.3d at 242 n.7. "Special damages exist when the plaintiff can show the loss of a specific, pending sale that was frustrated by the slander." *Allen-Pieroni v. Pieroni*, 535 S.W.3d 887, 889 (Tex. 2017) (per curiam). The supreme court held that West met his burden in establishing a prima facie case for the falsity of Quintanilla's liens, but remanded the cause to this court to determine whether West established causation and special damages, which remained in dispute. *West*, 573 S.W.3d at 249. Thus, we must consider whether West provided clear and specific evidence establishing a prima facie case that Quintanilla's liens caused special damages to West's interest in land through the loss of a specific, pending sale. West argues that he met this burden.

According to the pleadings and evidence provided by West, West owns overriding royalty interests from several mineral interests in McMullen County, Texas. The mineral interests are related to nine oil and gas leases. The oil and gas leases range in acreage, from approximately 80

acres to 4,000 acres. In March 2016, West entered into an agreement with a third-party investment group to sell his overriding royalty interests. On April 1, 2016, Quintanilla, through his attorneys, informed West that Quintanilla had filed a UCC-1 financing statement with the Texas Secretary of State and a UCC-1 financing statement and Memorandum of All-Assets Security Agreement in the real property records of McMullen County, Texas. West alleged that Quintanilla wrongfully filed the UCC-1 financing statement and Memorandum of All-Assets Security Agreement thereby creating fraudulent and false liens on the interests West owned in McMullen County, Texas. West was in the process of closing the sale of his overriding royalty interests with the third-party investment group, when, on April 6, 2016, the third-party investment group informed West that the Quintanilla liens clouded West's ownership and his ability to convey clear title to them. The would-be purchaser subsequently terminated the transaction. West alleged that the lost sale to the third-party investment group resulted in damage to him in the amount of $900,000.

Viewing the pleadings and evidence in the light most favorable to West, the evidence supports rational inferences that (1) West and the third-party investment group entered into an agreement and were in the process of closing a sale for West's overriding royalty interests before the Quintanilla liens clouded West's interest; (2) the Quintanilla liens caused the third-party investment group to terminate the transaction due to their concerns about West's ability to convey clear title; and (3) termination of the transaction caused West the lost sale of his overriding royalty interests. *See S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (noting the nonmovant is only required to produce the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true"). Thus, West has met his burden in providing clear and specific evidence establishing a prima facie case that Quintanilla's liens caused special damages to West's interest in land through the loss of a specific and pending sale.

*See In re Lipsky*, 460 S.W.3d at 590–91 (explaining the nonmovant's burden is only to provide sufficient evidence showing the factual basis for its claim).

Quintanilla argues that West was not only required to show the loss of a specific, pending sale, but was also required to provide the amount of actual damages.[4]  When the plaintiff still owns the slandered property interest at the time of trial, the amount of actual damages in a slander-of-title suit "is generally the difference between the contract price (the amount the plaintiff would have received but for the defendant's title disparagement) and the property's market value at the time of trial with the cloud removed." *Allen-Pieroni*, 535 S.W.3d at 889.  Thus, for West to provide the amount of actual damages caused by Quintanilla's slander, Quintanilla argues that West was also required to provide the market value of West's interest with the alleged cloud on title removed. Under the TCPA, however, the nonmovant is only required to "adduce evidence supporting a rational inference as to the existence of damages, not their amount or constituent parts." *Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 689 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing *In re Lipsky*, 460 S.W.3d at 590).  While the amount of actual damages caused by Quintanilla's slander and the market value of West's interest with the alleged cloud on title removed are likely necessary at an eventual trial on the merits, the TCPA imposes a minimal factual burden on the nonmovant in that the nonmovant is not required to offer all the evidence that they would, or could, need at trial. *See id.* (citing *In re Lipsky*, 460 S.W.3d at 590–91).  Rather, West is merely required to produce evidence sufficient to support a rational inference that Quintanilla's actions caused West some damage by way of a lost sale.  *See Elliott*, 564 S.W.3d at 847 (Tex. 2018) ("Direct evidence of damages is not required, but the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct.").

---

[4] Based on the particular wording West used in his affidavit, Quintanilla argues the $900,000 amount represents the purchase price.  West maintains the $900,000 amount represents the total amount of actual damages.

Because West produced evidence sufficient to support a rational inference that Quintanilla's liens caused West to lose the sale of his overriding royalty interests, we conclude that West met his burden in establishing a prima facie case for the causation and special damages elements of his slander-of-title claim.

CONCLUSION

Because the causation and special damages elements were the only elements at issue, we conclude that West established by clear and specific evidence a prima facie case for each essential element of his slander-of-title and fraudulent-lien claims. Therefore, Quintanilla's motion to dismiss West's slander-of-title and fraudulent-lien claims was properly denied. Accordingly, we affirm the trial court's order and remand this case to the trial court for further proceedings consistent with this opinion.

Rebeca C. Martinez, Justice