Opinion issued January 28, 2020



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00394-CV

————————————

## MISTY  HAWKINS, Appellant

## V.

## FOX CORPORATE HOUSING, LLC, Appellee

On Appeal from the 295th District Court
Harris County, Texas
Trial Court Case No. 2019-15485

## O P I N I O N

Fox Corporate Housing, LLC sued its former employee, Misty Hawkins, for breach of a non-compete and a non-disclosure agreement, injunctive relief, and attorney's fees. Hawkins answered and moved to dismiss under the Texas Citizens

Participation Act (the "TCPA")[1], and the trial court denied her motion. In five issues, Hawkins challenges the trial court's order denying her motion to dismiss. We affirm.

## Background

Fox Corporate Housing, LLC ("Fox") is a provider of short-term, fully-furnished rental properties. In August 2017, Fox hired Misty Hawkins as a Senior Account Executive. Hawkins was responsible for converting leads into sales, managing customer relationships, and processing lease paperwork.

### *The Non-disclosure and Non-compete Agreements and the Alleged Misconduct*

About a year after Fox hired her, Hawkins executed a non-disclosure agreement. Under the terms of the non-disclosure agreement, Fox would allow Hawkins access to "confidential and trade secret information," and Hawkins agreed to "treat all such information as confidential and to take all necessary precautions against disclosure of such information to third parties during and after the term of" the agreement. The non-disclosure agreement defined trade secrets as "[c]ustomer lists, pricing data, sources of supply, financial data and marketing,

---

[1] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–27.011. The Texas Legislature amended certain provisions of the TCPA in 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, § 12, sec. 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010 (to be codified at TEX. CIV. PRAC. & REM. CODE §§ 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010). The amendments became effective September 1, 2019. *Id.* at § 11. Because suit was filed before the effective date of the amendments, this case is governed by the statute as it existed before the amendments. *See id.* All our citations and analysis are to the TCPA as it existed prior to September 1, 2019.

production, or merchandising systems or plans," among other things. About a month later, Hawkins executed a non-compete agreement. The non-compete agreement precluded Hawkins from working with any of Fox's competitors within a 250-mile radius of Harris and Montgomery counties for a period of two years during and after the term of her employment. The non-compete agreement also included a non-solicitation provision, requiring that Hawkins not, among other things, "directly or indirectly . . . [s]olicit, entice, or hire away any employee or contractor of [Fox] for the purpose of an employment opportunity that is in competition with [Fox]."

Fox terminated Hawkins the following day for "employment-related issues." One month later, Fox received an e-mail sent to Hawkins's old Fox e-mail address. The e-mail was in response to Hawkins's earlier reply on behalf of Fox's competitor, Express Corporate Housing, LLC ("Express"). Fox determined that Hawkins was working at Express in violation of her non-compete and non-disclosure agreements.

On March 1, 2019, Fox sued Hawkins for breach of a non-compete and a non-disclosure agreement, injunctive relief, and attorney's fees. Fox alleged that Hawkins breached the non-compete and non-disclosure agreements by accepting a position with Express and soliciting Fox's customers. Fox also alleged that

Hawkins's misconduct caused it to lose business opportunities totaling "$3.5 million annually."

***The TCPA motion to dismiss proceedings***

Hawkins answered Fox's suit and moved to dismiss it under the TCPA. Fox opposed Hawkins's motion, arguing that the TCPA was inapplicable, that the commercial-speech exemption applied, and that Fox established by clear and specific evidence a prima facie case for each essential element of its claims.

After a hearing on Hawkins's motion, she filed a post-submission brief, citing case law in support of her arguments for lack of consideration for the non-compete and confidentiality agreements. Subsequently, the trial court ruled on Hawkins's evidentiary objections regarding the affidavit and e-mails attached to Fox's response to Hawkins's TCPA motion and denied her motion to dismiss.[2] This interlocutory appeal followed.

## Hawkins's TCPA Motion

**A.    Applicable law and standard of review**

Under the TCPA, a defendant may move to dismiss a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free

---

[2]    On appeal, Hawkins asserts that the trial court erred by overruling her objections to Fox's affidavit of its managing director, T. Leach, and to e-mails attached to the affidavit. We do not consider Hawkins's challenge to her evidentiary objections because it is sufficient for Fox to rely on the factual allegations in its pleadings to meet its burden. *See* TEX. CIV. PRAC. & REM. CODE § 27.006; *Greer v. Abraham*, 489 S.W.3d 440, 446 (Tex. 2016).

4

speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE § 27.003(a); *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, No. 18-0656, 2019 WL 6971659, at *2 (Tex. Dec. 20, 2019). "The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (citing TEX. CIV. PRAC. & REM. CODE § 27.002); *see KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 688 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). A party's TCPA motion must be filed in the early stages of litigation before the parties engage in significant discovery. *See In re Lipsky*, 460 S.W.3d at 589 (recognizing that the TCPA "endorses a summary process, requiring judicial review of the pleadings and limited evidence, typically within 150 days following service"). As such, the statute itself contemplates that the amount and quality of evidence available at the time the motion is filed will be less than that available at trial on the merits or even at the summary-judgment stage. *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 84 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (explaining that parties are not required "to marshal all of their evidence at the motion to dismiss stage").

The defendant-movant bears the initial burden of showing by a preponderance of evidence that the conduct that forms the basis of the claim against her is protected by the TCPA—that is to say, that the suit is based on,

relates to, or is in response to the movant's exercise of her right to free speech, association, or petition. TEX. CIV. PRAC. & REM. CODE § 27.005(b); *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the defendant meets this burden, then the burden shifts to the plaintiff-nonmovant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Dismissal of the case is required if the plaintiff-nonmovant fails to meet its burden or if the defendant-movant "establishes by a preponderance of the evidence each essential element of a valid defense to the [plaintiff's] claim." *Id.* § 27.005(d); *Baumgart v. Archer*, 581 S.W.3d 819, 825 (Tex. App.—Houston [1st Dist.] 2019, pet. filed). In conducting our review, we consider the pleadings and evidence in a light favorable to the plaintiff-nonmovant. *Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 685 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

We review de novo a trial court's ruling on a TCPA motion to dismiss. *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). We interpret the TCPA in accordance with its express statutory language. *See Jordan v. Hall*, 510 S.W.3d 194, 197 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009)). When construing the TCPA, as with any other statute, our objective is to give effect to the

6

legislative intent, looking first to the statute's plain language. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam).

## B.     The Commercial-Speech Exemption Applies

Section 27.010 exempts certain types of legal actions from the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.010. For instance, as asserted in this case, the commercial-speech exemption excludes certain commercial speech from the TCPA's protections. *See id*. § 27.010(b). The party asserting the commercial-speech exemption bears the burden to prove by a preponderance of the evidence that it applies. *Id*. § 27.010(b). There are four elements to the commercial-speech exemption:

(1) the defendant was primarily engaged in the business of selling or leasing goods or services;

(2) the defendant made the communication on which the claim is based in its capacity as a seller or lessor of those goods and services;

(3) the communication at issue arose out of a commercial transaction involving the kind of goods or services that the defendant provides; and

(4) the intended audience of the communication was actual or potential customers of the defendant for the defendant's kind of goods or services.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam). We consider the pleadings and the TCPA record to determine whether a party has met its burden on the commercial-speech exemption's elements. *See Grant v. Pivot*

*Tech. Sols., Ltd.*, 556 S.W.3d 865, 889 (Tex. App.—Austin 2018, pet. filed); *Giri v. Estep*, No. 03-17-00759-CV, 2018 WL 2074652, at \*4 (Tex. App.—Austin May 4, 2018, pet. denied) (mem. op.). We may rely on the factual allegations in a plaintiff's petition, alone, to meet the elements. *See Grant*, 556 S.W.3d at 889. We now analyze each element in turn.

### 1. Hawkins was primarily engaged in the business of selling services

Hawkins argues that Fox failed to establish the first element of the commercial-speech exemption because Hawkins herself is not a business entity and she made no "statements or engaged in conduct for *her* customers." In response, Fox contends that the exemption applies to individual persons and urges the Court to rely on the plain text of the exemption, which provides that the "TCPA does not apply to a legal action brought against a *person*." TEX. CIV. PRAC. & REM. CODE § 27.010(b). In support of its position, Fox relies on *Rose v. Science Machine & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.).

In *Rose*, Scientific Machine & Welding, Inc. sued its former employee, Kevin Rose, for breach of contract and trade-secret misappropriation after he started working for one of its customers. *Id*. at \*1. Rose filed a TCPA motion to dismiss, and the trial court denied the motion. *Id*. Rose appealed, arguing that the trial court erred in denying his TCPA motion because Scientific failed to prove that

8

the commercial-speech exemption applied. *Id*. The court concluded that when an employee resigns from a company and then performs or seeks to perform "similar services for his former employer's customers," then he continues "to be primarily engaged in that type of business for the purposes of the TCPA's commercial-speech exemption." *Id*. at *5.

In its trial court pleadings, Fox alleged that, when Fox terminated her employment, Hawkins allegedly performed or sought to perform similar services for one of her former employer's major competitors. Fox specifically pleaded that "Hawkins was a Senior Account Executive . . . responsible for converting leads into sales, managing customer relationships, and processing lease paperwork." Fox further pleaded that Fox's customers attempted to contact Hawkins using her former Fox e-mail address to convert a lead into a sale when Fox's customer asked Hawkins to "find three houses in the Northeast area." And, in her role at Express as a "sales executive" or a "national leasing associate," Hawkins is "currently servicing customers that she misappropriated from Fox." Express is "one of Fox's chief competitors."

According to the pleadings and TCPA record evidence, Hawkins was responsible for providing a service of locating short-term, fully-furnished rental properties at Fox and now provides a similar service at Express. There is no requirement that Hawkins be "the actual business itself" before Fox can claim the

9

commercial-speech exemption. *See Hieber v. Percheron Holdings, LLC*, No. 14-19-00505-CV, 2019 WL 6001153, at \*4 (Tex. App.—Houston [14th Dist.] Nov. 14, 2019, no pet. h.) (explaining that the commercial-speech "exemption can apply even though the movant is just an employee"); *Rose*, 2019 WL 2588512, at \*5 ("Notably, the exemption's plain text requires the defendant to be primarily engaged in *the business* of selling goods or services, not primarily engaged in the act of *selling*."). In reviewing the allegations in the parties' pleadings and record evidence in a light favorable to Fox, we conclude that Hawkins was primarily engaged in the business of selling or leasing goods or services.

### 2. Hawkins made communications in her capacity as a seller of services

We review the context of the statements to determine whether the challenged statements propose a commercial transaction. *Rose*, 2019 WL 2588512, at \*5. Fox alleged that Hawkins's solicitation of Fox's former customers resulted in a loss of two customers valued at about $3.5 million annually. Fox relies on its former customer's e-mail to Hawkins and contends that these "two former customers are leasing properties from Hawkins at Express and no longer do business with Fox." In other words, Fox contends that Hawkins unlawfully used its client data to communicate with and solicit clients and she disclosed its "pricing material" in her capacity as a competing sales executive at Express. And, because of this alleged use and disclosure of Fox's confidential information, Fox's former customers have

10

since ended their business relationship with Fox and have now contracted with its competitor.

Based on the record evidence and the allegations in the parties' pleadings, we conclude that Hawkins made the communications on which Fox's claims are based in her capacity as a seller of goods or services. *See Giri*, 2018 WL 2074652, at \*4 (concluding that second element of the commercial-speech exemption was met where evidence showed appellant sent e-mail to his past customers acknowledging their prior use of his pathology services); *Epperson v. Mueller*, No. 01-15-00231-CV, 2016 WL 4253978, at \*10–11 (Tex. App.—Houston [1st Dist.] Aug. 11, 2016, no pet.) (mem. op.) (determining that statements made by defendant-seller of collectible memorabilia about authenticity of competitor's goods were made in the course of promoting defendant's authenticity services). Hawkins made statements to Fox's former customers in an attempt to promote Express, according to Fox's allegations. *See Staff Care, Inc. v. Eskridge Enterprises, LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at \*8 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.) (determining that the second element of the commercial-speech exemption was met where pleadings showed that "Staff Care pursued business for itself and stood to profit from it" when it told "its physicians and potential physicians they were not permitted to leave or work with Eskridge").

11

### 3. The communication arose out of a commercial transaction involving the kind of services that Hawkins provides

The third element requires Fox to show that the statement or conduct at issue arose out of a commercial transaction involving the kind of services that Hawkins provides. Fox asserted two breach-of-contract claims against Hawkins for: (1) working for a competitor in breach of the non-compete agreement; and (2) soliciting Fox's customers and using Fox's confidential information. These claims arose out of sales services Hawkins provides at Express, including locating short-term, fully-furnished rental properties. We conclude that Fox's pleadings and evidence establish the third element of the commercial-speech exemption. *See Morrison v. Profanchik*, 578 S.W.3d 676, 683 (Tex. App.—Austin 2019, no pet.) ("A defendant's online review of a competitor's sale and installation of the same product sold and installed by the defendant is a statement that meets" the third element of the commercial-speech exemption); *Callison v. C&C Pers., LLC*, No. 09-19-00014-CV, 2019 WL 3022548, at *6 (Tex. App.—Beaumont July 11, 2019, pet. denied) (mem. op.) ("Utilizing confidential or proprietary information from a previous employer while working for a new employer to target and secure the same customers satisfies this element.").

**4.** **The intended audience of the communication was actual customers of Hawkins for Hawkins's kind of services**

The final element of the commercial-speech exemption requires Fox to show that the intended audience of Hawkins's statements and conduct was an actual or potential customer for the kind of services that Hawkins provides. As addressed above, Fox has alleged through its pleadings and evidence that Hawkins has targeted and poached at least two of its former customers who no longer do business with Fox. Specifically, Fox alleged that Hawkins is "currently servicing customers that she misappropriated from Fox." We hold that Fox met its burden to establish the fourth element of the commercial-speech exemption.

Viewing the pleadings and TCPA record evidence in a light favorable to Fox, we conclude that Fox established by a preponderance of the evidence that its lawsuit is exempt from the TCPA under the commercial-speech exemption. *See Grant*, 556 S.W.3d at 889. Because the trial court's ruling may be affirmed on this basis, we need not address the parties' remaining arguments. *See* TEX. R. APP. P. 47.1.

**Conclusion**

Having concluded that the TCPA's commercial-speech exemption applies, we affirm the trial court's order denying the motion to dismiss.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.